MANUEL v. WEITZMAN

OPINION OF THE COURT

1. INTOXICATING LIQUORS—INVITEES—COMMON-LAW DUTY—DRAM-
SHOP ACT.

The common-law duty of a liquor establishment to maintain a
safe place of business for its customers is the same duty any
business owes to those it invites upon its premises and the
dramshop act was not intended to affect that duty but such
acts were passed because under the common law it was not a
tort to sell or furnish intoxicating liquor to an ordinary able-
bodied man, even though as a result of his becoming intoxicated
injury resulted to himself or to others, and their purpose was
to fill a void in the law, not to remove the well-recognized
duty of a tavern keeper to exercise due care for the welfare
and safety of invited patrons.

2. INTOXICATING LIQUORS—CIVIL LIABILITY—DRAMSHOP ACT—NEGLI-
GENCE—INVITEES.

Prior decisions are in error insofar as they purport to hold that
the liability provisions of the dramshop act not only preempt
any common-law action for negligent sale, but also preempt a
common-law action for negligence in failing to maintain a
suitable place and safe conditions for business invitees.

3. INTOXICATING LIQUORS—DRAMSHOP ACT—REMEDIES.

The dramshop act affords the exclusive remedy for injuries
arising out of an unlawful sale, giving away, or furnishing
of intoxicants (MCLA § 436.22).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 9, 10]  45 Am Jur 2d, Intoxicating Liquors §§ 553–560.
[2]  45 Am Jur 2d, Intoxicating Liquors § 557.
[3]  45 Am Jur 2d, Intoxicating Liquors §§ 566–571, 575–581.
[5]  45 Am Jur 2d, Intoxicating Liquors §§ 595–598.
[6]  45 Am Jur 2d, Intoxicating Liquors §§ 608–612.
[7]  45 Am Jur 2d, Intoxicating Liquors § 611.
[8]  45 Am Jur 2d, Intoxicating Liquors § 352.

4. Intoxicating Liquors—Dramshop Act—Unlawful Conduct—
   Negligence—Common-Law Action.

   The dramshop act does not control and it does not abrogate ac-
   tions arising out of unlawful or negligent conduct of a tavern
   owner other than selling, giving away, or furnishing of in-
   toxicants, provided the unlawful or negligent conduct is recog-
   nized as a lawful basis for a cause of action in the common
   law (MCLA § 436.22).

5. Intoxicating Liquors—Civil Liability—Negligence—Invitees
   —Pleadings—Joinder of Counts—Evidence.

   Joinder of plaintiffs' claims against a bar owner in separate
   counts under the civil liability provision of the dramshop act
   and that defendant violated his common-law duty to maintain
   safe premises for his business invitees was proper where plain-
   tiffs introduced evidence which would show that defendant knew
   that another customer who later attacked one of the plaintiffs
   had engaged in a fight in a bar at some time before the
   attack; that the bartenders on duty did not take sufficient
   measures to eject him after he became obstreperous and dis-
   ruptive; and that, after the other customer attacked one of
   the plaintiffs, the bartenders did not act immediately to protect
   him from injury as the evidence, if believed by the jury, would
   allow them to conclude that defendant failed to take action
   to protect that plaintiff from injury by the other customer.

6. Damages—Instructions—Negligence—Intoxicating Liquors—
   Exemplary Damages—Actual Damages—Compromise and Set-
   tlement—Double Recovery—Mitigation of Damages.

   Judge should instruct the jury in an action for damages against
   a bar owner that plaintiffs have received a certain amount in
   settlement of the counts under the civil liability provisions of
   the dramshop act and only that portion of the settlement
   received for actual damages should be considered by the jury,
   if they find for plaintiffs, in awarding damages under other
   counts alleging that defendant violated his common-law duty
   to maintain safe premises for his business invitees and, if the
   parties are unable to agree what amount of the settlement was
   for actual damages and for exemplary damages, the jury should
   be instructed on the meaning of those damages so that they
   can make a proper division of the settlement between actual
   damages which should be set off against any damages for
   common-law negligence, in order to avoid a double recovery,
   and exemplary damages which should not be so set off (MCLA
   § 436.22).

OPINION CONCURRING SEPARATELY IN REVERSAL AND REMAND
BLACK, J.

7. DAMAGES—ACTUAL DAMAGES—EXEMPLARY DAMAGES—DRAMSHOP ACT—COMMON-LAW ACTION—COMPENSATORY DAMAGES.

*A plaintiff may recover "actual and exemplary" damages under the dramshop statute; whereas the common-law measure is compensatory only (MCLA § 436.22).*

8. ACTION—SPLITTING CAUSE OF ACTION—WAIVER—DRAMSHOP ACT—COMMON-LAW ACTION.

*Defense of a split cause of action may be waived by a defendant and this defense was waived where defendant's counsel stipulated to the elimination for trial of counts in a complaint under the dramshop statute for personal injuries and to proceeding with trial of other counts in the complaint for the same injuries, said as having arisen simultaneously out of the same evidentiary facts, for negligence by the common law (MCLA § 436.22).*

9. ESTOPPEL—SETTLEMENT—DRAMSHOP ACT—COMMON-LAW ACTION.

*Defendant estopped himself from claiming that a settlement made as regards counts in a complaint alleging a cause against defendant under the dramshop statute for personal injuries barred plaintiffs' right to proceed for more damages under other counts in the complaint for the same injuries, said as having arisen simultaneously out of the same evidentiary facts, for negligence by the common law where defendant contracted to pay a certain sum in return for a release of his dramshop liability, if any, and elected to risk a trial of his alleged and denied common-law liability, whereunder he might or might not be held for more and defendant is bound to endure a trial of that which by agreement of his counsel and plaintiffs' counsel, with approval of the court, was left open for litigatory determination (MCLA § 436.22).*

10. INTOXICATING LIQUORS — DRAMSHOP ACT — INVITEES — COMMON-LAW DUTY.

*The dramshop act did not abrogate or otherwise eliminate the common-law right of action which arises from breach of one's common-law duty to maintain his place of business for the safety of his customers (MCLA § 436.22).*

Appeal from Court of Appeals, Division 1, T. M. Burns, P. J., and Holbrook and Bronson, JJ., re-

versing Wayne, Harry J. Dingeman, Jr., J. Submitted June 10, 1971. (No. 14, June Term 1971, Docket No. 52,817.) Decided November 9, 1971.

23 Mich App 96 affirmed as modified.

Complaint by Arthur Manuel and Violet Manuel against Harry Weitzman, owner of the Roxy Bar, for damages for injuries received in an assault by a customer in the Roxy Bar. Directed verdict for defendant. Plaintiffs appealed to the Court of Appeals. Reversed and remanded. Defendant appeals. Affirmed as modified and remanded for trial.

*Dietrich & Shrauger.* (by *James A. Tucker*), for plaintiffs.

*Sugar, Schwartz, Silver, Schwartz & Tyler,* for defendant.

ADAMS, J.

## I.

### THE FACTS AND PROCEEDINGS

Arthur Manuel was a customer at the Roxy Bar on July 24, 1964. He suffered serious injury to his ankle as a result of an attack by another customer, Patrick Carrigan.

Manuel and his wife, Violet, filed suit against Harry Weitzman, the bar owner, suing on four counts. Counts I and II, under the civil liability provision of the dramshop act (MCLA § 436.22 [Stat Ann 1971 Cum Supp § 18.993]), alleged that Carrigan was served drinks after he was already intoxicated. Immediately before trial, these counts were settled for $5,000.

Counts III and IV alleged that defendant violated his common-law duty to maintain safe premises for his business invitees. At the conclusion of plaintiffs' case, the trial judge granted defendant's motion for a directed verdict based on two grounds:

1) The sole cause of action against a bar owner for injuries inflicted by an intoxicated customer is provided by the dramshop act. (MCLA § 436.22 [Stat Ann 1971 Cum Supp § 18.993].)

2) No evidence was presented from which the jury could find that defendant breached his duty to maintain his premises in a safe condition for business invitees.

Plaintiffs appealed. The Court of Appeals reversed. (23 Mich App 96.) We granted defendant leave to appeal. 384 Mich 763.

Plaintiffs rely on *Gorby* v. *Yeomans* (1966), 4 Mich App 339, which held that bar owners are liable under the common law if they breach their duty to maintain safe premises; and *Baker* v. *Golematis* (1969), 17 Mich App 383, and *De Villez* v. *Schifano* (1970), 23 Mich App 72, holding that a common-law action for breach of duty can be joined with an action brought under the dramshop act.

Defendant argues that the Court of Appeals' decision is contrary to the holding of *Kangas* v. *Suchorski* (1964), 372 Mich 396.

## II.

### DRAMSHOP ACT REMEDY NOT EXCLUSIVE

In *Kangas,* plaintiff was injured in an assault by his drinking companion, Exelby. The chief question was whether plaintiff could recover under the dramshop act from the proprietor, the plaintiff having contributed to Exelby's intoxicated condition by pur-

chasing drinks for him. In a concluding paragraph of the opinion, this Court stated (p 401):

"Plaintiff's declarations contained a count 2, not based upon the civil damages provision of the act, but asserting common-law liability on defendant's part for negligence in failing to maintain a suitable place and safe conditions for business invitees. Such cause of action he may not assert, his exclusive remedy being under the civil-damage provisions of the statute. *Jones* v. *Bourrie* [1963], 369 Mich 473."

In *Jones* v. *Bourrie* (1963), 369 Mich 473, plaintiff, a guest passenger, had been injured in an auto accident allegedly as a result of his driver's intoxicated condition. Plaintiff charged the driver was served liquor in defendant's bar after he was already intoxicated. The complaint was filed after the two-year statute of limitations providing for civil liability under the dramshop act had run but within the three-year statute of limitations for general tort actions. This Court held (pp 476, 477):

"Plaintiff herein, for unknown reasons, permitted the statutory period to run. He cannot now assert an action to exist at common law. Plaintiff's remedy was under the statute (CL 1948, § 436.22, as amended) and he failed to timely exercise it. To allow now an action, based on a common-law remedy, would be to permit circumvention of the statute and to assert a nonexistent remedy beyond that provided by the legislature."

*Jones* was concerned with the liability of a tavern keeper who served liquor to an already intoxicated person. The facts in that case brought it clearly under the statute. *Kangas* was decided on the issue that plaintiff bought drinks for his companion and so was not an innocent person entitled to recover under the act. *Kangas* repeated the dictum in *Jones*

and ignored the common-law count. Neither case considered the question of the liability of a tavern keeper for breach of a duty to a patron arising out of the presence of the patron in the tavern keeper's establishment and not necessarily involving the furnishing of liquor either to the patron or to some other person. The common-law duty of a liquor establishment to maintain a safe place of business for its customers is the same duty any business owes to those it invites upon its premises. The dramshop act was not intended to affect that duty. Dramshop acts were passed because under the common law it was not a tort to sell or furnish intoxicating liquor to an ordinary able-bodied man, even though as a result of his becoming intoxicated injury resulted to himself or to others.[1] Their purpose was to fill a void in the law, not to remove the well-recognized duty of a tavern keeper to exercise due care for the welfare and safety of invited patrons.

Such a duty was recognized by this Court in *Torma* v. *Montgomery Ward & Company* (1953), 336 Mich 468, 476, wherein it was said:

"As invitor the defendant owed the duty to its customers and patrons, including the plaintiff, of maintaining its premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation, known to it or that should have been known, that might result in injury."

The Minnesota Supreme Court has repeatedly affirmed the common-law duty of bar owners to protect their patrons from reasonably foreseeable assaults of other intoxicated patrons despite the existence of a Minnesota civil liability provision. In

---

[1] But see F. King, *Common Law Liability of the Liquor Vendor*, 18 W Res L Rev 251 (1966).

*Windorski* v. *Doyle* (1945), 219 Minn 402, 407 (18 NW2d 142), the Court quoted with approval an earlier statement of the common-law duty:

" 'There is no reason on principle why a person owning and controlling such a place, who sells his wares to such a person, knowing his ugly and quarrelsome disposition when intoxicated, should not be bound to exercise at least reasonable care to protect his other guests from his assaults and insults. The proprietor of such a place has the undoubted right to exclude therefrom drunken and disorderly persons, and the right to remove and expel them when they become in that condition and disorderly, and likely to produce discord and brawls. Being clothed with such power and authority, a corresponding duty to do so in the interests of law and order, and for the protection of his other guests, should be imposed as a matter of law.' "[2]

The decisions in *Kangas* and *Jones* are in error insofar as they purport to hold that the liability provisions of the dramshop act not only preempt any common-law action for negligent sale, but also preempt a common-law action for "negligence in failing to maintain a suitable place and safe conditions for business invitees". The Court of Appeals' decisions in *Baker* and *De Villez, supra,* state the correct rule of law. We specifically approve the following statement in *De Villez* (p 77):

"We hold that the dramshop act affords the exclusive remedy for injuries arising out of an *unlawful*

---

[2] See, also, *Blakeley* v. *White Star Line* (1908), 154 Mich 635; *Rommel* v. *Schambacher* (1887), 120 Pa St 579 (11 A 779); *Moon* v. *Conley* (1918), 9 Ohio App 16 (30 Ohio CA 14); *McFadden* v. *Bancroft Hotel Corporation* (1943), 313 Mass 56 (46 NE2d 573); *Greco* v. *Sumner Tavern, Inc.* (1955), 333 Mass 144 (128 NE 2d 788); *Kane* v. *Fields Corner Grille, Inc.* (1961), 341 Mass 640 (171 NE2d 287), and Restatement, Torts 2d, § 344, p 223 and Annotation, *Liability of innkeeper, restaurateur or tavern keeper for injury occurring on or about premises to guest or patron by person other than proprietor or his servant,* 70 ALR2d 628.

*sale, giving away,* or *furnishing of intoxicants.  King
v. Partridge* (1968), 9 Mich App 540, 543.  However,
the act does not control and it does not abrogate ac-
tions arising out of unlawful or negligent conduct of
a tavern owner other than *selling, giving away,* or
*furnishing of intoxicants,* provided the unlawful or
negligent conduct is recognized as a lawful basis for
a cause of action in the common law."

From the above statement by the Court of Ap-
peals, it can readily be seen that the problem posed
by these cases is to determine whether (1) the cause
of action arises under the dramshop act, or (2) as
the result of the breach of a common-law duty, or
(3) presents a situation in which both causes of
action arise out of the same incident.  In this third
situation, which confronts us in this case, the ques-
tion arises as to whether the two causes of action
may be joined in a single lawsuit.

### III.

#### JOINDER OF DRAMSHOP ACT CLAIM AND COMMON-LAW CLAIM PROPER

In *Shandor* v. *Lischer* (1957), 349 Mich 556, this
Court held that a common-law cause of action of
assault and battery can be joined with a statutory
cause of action under the dramshop act even though
both were based on the same altercation.

In *Ruediger* v. *Klink* (1956), 346 Mich 357, plain-
tiff was injured in an automobile accident.  He elect-
ed to join in one lawsuit his claims against various
bars under the dramshop act and a claim against
the intoxicated driver of the automobile for com-
mon-law negligence.  This Court held that both
actions could be brought in a single lawsuit and
approved such a procedure.

See, also, GCR 1963, 203.

In *Tyrrell* v. *Quigley* (1946), 186 Misc 972, 973 (60 NYS2d 821, 822), the Court denied a motion to dismiss a complaint combining law and dramshop statute counts:

"The above statutes [New York dramshop act] do not constitute the sole source upon which might be predicated the instant cause of action. Under the particular facts as here alleged the action is maintainable also at common law. This is true for the reason that the defendant was bound to use reasonable care to protect his patrons from injury at the hands of a vicious individual whom allegedly he knowingly permitted to be in and about his place of business. The applicable rule is referred to in Restatement of the Law of Torts, Vol. 2, § 348 (pp. 953–956), wherein it is expressly pointed out that in the exercise of reasonable care the owner of a public place has a *'Duty to police the premises'* and to furnish a sufficient number of servants to afford reasonable protection 'if the place is one or the character of the business is such' that the owner should anticipate the presence thereon of disorderly persons generally or at any particular time." (Emphasis supplied.)

The same result was reached in *Morrissey* v. *Sheedy* (1966), 26 App Div 2d 683 (272 NYS2d 430).[3]

Plaintiffs introduced evidence which, if believed by the jury, would show that defendant knew that Carrigan had engaged in a fight in a bar at some time before the attack; that the bartenders on duty did not take sufficient measures to eject him after

---

[3] In *Brink* v. *James Arthur Ashe Post, VFW* (1949), 75 D & C 496, by ordering a complaint for common-law negligence and violation of the Pennsylvania dramshop act amended sufficiently to allege the dramshop act violation, the court recognized the right to join the two causes of action.

he became obstreperous and disruptive; and that, after Carrigan attacked Manuel, the bartenders did not act immediately to protect him from injury. Plaintiffs' evidence, if believed by the jury, would allow the jury to conclude that defendant failed to take action to protect Arthur Manuel from injury by Carrigan. The joinder of plaintiffs' claims in separate counts was proper.

## IV.

### No DOUBLE RECOVERY

There remains the problem, created by the dramshop counts settlement, of avoiding a double recovery. On retrial, the judge should instruct the jury that plaintiffs have received a $5,000 settlement and that the jury should take this into consideration in awarding damages if they find for plaintiffs. *Larabell* v. *Schuknecht* (1944), 308 Mich 419, 423. Since the dramshop act provides "the right to recover actual and exemplary damages in such sum not less than $50.00 in each case as the court or jury may determine",[4] only that portion of the $5,000 received for actual damages should be considered by the jury. The parties may stipulate what amount of the settlement was for actual damages and what amount was for exemplary damages. In the event the parties are unable to agree, the trial judge should instruct the jury on the meaning of actual and exemplary damages so that the jury can make a proper division of the $5,000 settlement between actual damages which shall be set off against any damages awarded for common-law negligence and the exemplary damages which shall not be so set off.

---

[4] MCLA § 436.22 (Stat Ann 1971 Cum Supp § 18.993).

The decision of the Court of Appeals, as modified, is affirmed. The case is remanded for trial. Costs to plaintiffs.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with ADAMS, J.

BLACK, J. (*concurring separately in reversal and remand*). Counts I and II of plaintiffs' complaint alleged a cause against defendant under the dramshop statute (MCLA § 436.22 [Stat Ann 1971 Cum Supp § 18.993]) for personal injuries. Counts III and IV of the complaint alleged a cause against defendant for the same injuries, said as having arisen simultaneously out of the same evidentiary facts, for negligence by the common law. Under the dramshop statute the plaintiff may recover "actual and exemplary" damages; whereas the common-law measure is compensatory only. The plaintiffs were not put to a compelled election between the statutory counts and the common-law counts; hence today's question is whether that which took place just before the trial (quoted seriatim, *post*), and thereafter prior to entry of the circuit court's peremptory judgment of no cause, barred plaintiffs' alleged right of recovery under counts III and IV.

The real question is whether, by accepting $5,000 from defendant in return for the fully stipulated elimination of plaintiffs' counts for statutory violation, the circumstances of the acceptance per stipulation being as presently quoted, plaintiffs thereby split their cause in nullification of remaining counts III and IV. My response to that question brings to the fore our standing rule that the defendant *may waive* the defense of split cause (*Wolverine Ins. Co. v. Klomparens* [1935], 273 Mich 493 and *Coniglio* v.

*Wyoming Valley Fire Ins. Co.* [1953], 337 Mich 38)[1] and that this defendant did so when his counsel stipulated to the elimination for trial of counts I and II and to proceeding with trial of counts III and IV.

Prior to jury selection and after the case was called for trial, this took place:

*"The Court:* You may proceed.

*"Mr. Tonkin* [*attorney for defendant*]: May it please the court, speaking on behalf of the defendant, we informed your Honor that we have settled the case insofar as Counts I and II are concerned, which are allegations of violation of the Michigan Liquor Act, and I believe that that is settled.

"Your client is satisfied with that settlement, Mr. Shrauger?

*"Mr. Shrauger* [*attorney for plaintiff*]: Yes, Mr. Tonkin and your Honor, sir, they are.

*"Mr. Tonkin:* The case remains at issue here before your Honor as to Counts III and IV, which are, as I understand it, common law negligence, and Mr. Tyler will represent Mr. Weitzman d/b/a Roxy Bar for those two counts; is that correct, Mr. Tyler?

*"Mr. Tyler* [*attorney for defendant*]: That is correct.

*"The Court:* What disposition do you wish made of the aspect of the case that you are defendant?

*"Mr. Tonkin:* I will prepare a stipulation and order, your Honor, dismissing Counts I and II of the complaint.

---

[1] Such is the nationally accepted rule. See ink-fresh annotation, *Waiver of, by Failing to Promptly Raise, Objection to Splitting Cause of Action,* 40 ALR3d 108, and § 132 of 1 Am Jur 2d, Actions, p 651:

"The rule against splitting a cause of action is primarily for the benefit of the defendant, to protect him against a multiplicity of suits, and he may agree to a splitting of the cause of action, in which case the courts will respect the agreement, and by his conduct he may be held to have waived his right to insist upon the rule, and a waiver will be presumed unless timely and proper objection is made."

"*Mr. Shrauger:* That is satisfactory with me, your Honor.

"*The Court:* Very well.

"You are ready to proceed to a jury with the other counts?

"*Mr. Tonkin:* I think the record should show, in the event the defendant is entitled to any credit, the record should show the plaintiffs are being paid $5,000.00. I don't know what effect that amount has on the value of this case or whether the defendant is entitled to a setoff or anything, but I just put that on the record and I will let other attorneys worry about that.

"Is that the settlement, Mr. Shrauger?

"*Mr. Shrauger:* That is the settlement, yes.

"*The Court:* As soon as we have a jury empanelled, we will proceed to try the case on Counts III and IV; is that your pleasure, gentlemen?

"*Mr. Tyler:* That is correct, your Honor.

"*Mr. Shrauger:* That is correct.

"*Mr. Tyler:* Unless Mr. Shrauger wants to waive the jury.

"*The Court:* We have to bring the panel from the other building, so it will be a few minutes."

After the trial of counts III and IV had taken place, and after the jury's instructed verdict had been taken and the jury discharged, but prior to entry of judgment upon the verdict, a stipulation and order were filed, providing that "Count I and II of the above entitled cause be and the same is hereby dismissed with prejudice and without costs to any of the parties". The stipulation and order entered thereon make no mention of counts III and IV, and proceed inferably on the theory that the latter had been tried and found wanting for some unexpressed reason.

I hold that the defendant, knowledgeable from the beginning of the settlement made as regards counts

I and II, estopped himself from claiming that the agreed adjustment barred plaintiffs' right to proceed for more under counts III and IV. He could have refused to settle for any figure unless thereby he became fully absolved. He contracted instead to pay $5,000 in return for a release of his dramshop liability, if any, and elected to risk a trial of his alleged and denied common-law liability, whereunder he might or might not be held for more. I perceive no good reason why a plaintiff and a defendant cannot so stipulate, and conclude that defendant is bound to endure a trial of that which by agreement of his counsel and plaintiffs' counsel, with approval of the court, was left open for litigatory determination.

There is no occasion for overrulement in whole or in part, or even of criticism of *Jones* v. *Bourrie* (1963), 369 Mich 473 and *Kangas* v. *Suchorski* (1964), 372 Mich 396, for the very reason given by the majority, that is, "Neither case considered the question of the liability of a tavern keeper for breach of a [common-law] duty to a patron arising out of the presence of the patron in the tavern keeper's establishment and not necessarily involving the furnishing of liquor either to the patron or to some other person."[2]

I agree with the majority's reasoning, supported as it is by reasoned authority, that the dramshop act did not abrogate or otherwise eliminate the common-law right of action which arises from breach of one's common-law duty to maintain his place of business in the manner set forth in the majority opinion, and therefore concur in reversal of the cir-

---

[2] There is unnecessary *dicta* indeed both in *Jones* and *Kangas,* and it does if authoritative tend to support view that the statutory right of action is exclusive of that which plaintiffs seek to try under counts III and IV. But any *dictum,* once spotted and isolated, is dangerously unsafe ground for reliance. See Cardozo, quoted in *Breckon* (383 Mich at 270).

cuit court's judgment with remand which our regular majority has provided. Plaintiffs should have costs of all three courts.