LOVER v SAMPSON

OPINION OF THE COURT

1. INTOXICATING LIQUORS—LIQUOR CONTROL ACT—STATUTORY CONSTRUCTION.

In a case where the application of the dramshop act, which is a part of the Liquor Control Act, is claimed, the courts are obliged to construe any words or phrases as they are defined in the Liquor Control Act, unless the context in which they are used requires otherwise (MCLA 436.2 *et seq.,* 436.22).

2. INTOXICATING LIQUORS—LIQUOR CONTROL ACT—SCOPE.

The Liquor Control Act was intended to regulate those in the business of manufacturing and distributing alcoholic beverages and not intended to regulate the private individual who furnishes alcoholic beverages to another as a social courtesy and therefore those portions of the act which provide a right of action to those persons injured by the unlawful sale, giving, or furnishing of intoxicating liquors does not include a coverage of actions against private persons who are not engaged in the business of selling alcoholic beverages (MCLA 436.22).

3. INTOXICATING LIQUORS—DRAMSHOP ACT—ACTION.

The rights of action authorized by that portion of the Liquor Control Act known as the "dramshop act" apply to actions against commercial vendors of alcoholic beverages and are wholly inapplicable to a case where none of the defendants were so engaged (MCLA 436.22).

4. TORTS—FURNISHING ALCOHOLIC BEVERAGES—MINORS.

The general rule that it is not a tort to sell or give alcoholic beverages to a strong and able-bodied man is not in point with and is not controlling in a case where alcohol was dispensed to minors.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 45 Am Jur 2d, Intoxicating Liquor §§ 561–565.
[4] 45 Am Jur 2d, Intoxicating Liquor § 187.
[5–9] 45 Am Jur 2d, Intoxicating Liquor §§ 582–585.
[10] 57 Am Jur 2d, Negligence § 239.

5. INTOXICATING LIQUORS—STATUTES—PENAL PROVISIONS—COMMON LAW.

A common-law cause of action may arise upon violation of penal provisions governing the use of alcoholic beverages in instances where there is no statute creating a civil cause of action.

6. INTOXICATING LIQUORS—VIOLATIONS OF STATUTES—NEGLIGENCE.

Violations of statutes governing the use and consumption of alcohol can constitute negligence per se and will give rise to a cause of action for personal injuries resulting therefrom because the penal statutes were enacted in an effort to protect the general public from personal injuries (MCLA 436.34, 750.141a).

7. NEGLIGENCE—PROXIMATE CAUSE—QUESTION OF FACT.

The question of proximate cause in a negligence case is ordinarily a question of fact for the jury to be resolved by the exercise of common sense in consideration of each particular case.

8. AUTOMOBILES—NEGLIGENCE—PROXIMATE CAUSE—QUESTION OF FACT.

The trial court erred in granting certain defendants in an automobile negligence case an accelerated judgment on the basis that handing a can of beer by them to the driver of an automobile while it was in motion could not be the proximate cause of an accident because the plaintiffs' claim of proximate causation was properly a question for the jury and not for the trial judge.

DISSENT IN PART, CONCURRENCE IN PART, BY BORRADAILE, J.

9. AUTOMOBILES—NEGLIGENCE—STATUTES.

*The statute prohibiting consumption of alcoholic liquors on public highways has no application in a suit for damages resulting from an automobile accident where the plaintiffs did not allege that the defendants consumed alcoholic liquor on the public highways but only that a can of beer was handed by certain of the defendants to the driver of the automobile. (MCLA 436.34).*

10. NEGLIGENCE—NEGLIGENCE PER SE—VIOLATION OF CRIMINAL STATUTES.

*The violation of a criminal statute should not always constitute negligence per se, although it may, because not all violations of the criminal law are unreasonable, and criminality should only be evidence of negligence.*

Appeals from Oceana, Harold Van Domelen, J. Submitted Division 3 April 4, 1972, at Grand Rapids. (Docket Nos. 13263, 13264.) Decided December 6, 1972.

Complaints by Dale Lover, administrator of the estate of Beulah H. Lover, and by James E. Lover against James Sampson, Harry Skok, Mike Kukulka, Fred Miller, and Mary Jane Tucker for damages resulting from an automobile accident. Accelerated judgments in favor of defendants Skok, Kukulka, Miller, and Tucker. Plaintiffs appeal. Reversed and remanded.

*Seymour I. Rosenberg (John B. Olsen,* of counsel), for plaintiffs.

*Poppen, Street, Sorensen & Engle* (by *William J. Hipkiss),* for defendants Skok and Kukulka.

Before: T. M. BURNS, P. J., and HOLBROOK and BORRADAILE,* JJ.

T. M. BURNS, P. J. This appeal involves two separate but subsequently consolidated suits which were brought by plaintiffs for injuries sustained in an automobile collision.

On June 30, 1968, a vehicle driven by defendant Sampson and containing defendants Skok, Kukulka, Miller, and Tucker swerved across the center line of the roadway and collided with the plaintiffs' auto. As a result, plaintiff James Lover was injured and his wife, Beulah, was killed.

Plaintiffs filed suit against defendant Sampson on September 19, 1969. The complaint was amended June 12, 1970, adding defendants Skok,

---

* Former circuit judge, and now probate judge, sitting on the Court of Appeals by assignment.

Kukulka, Miller, and Tucker. The plaintiffs' claims against Sampson were settled January 15, 1971, and the suit as to Sampson was dismissed. The action, however, was continued against the remaining defendants.

In their complaints, plaintiffs alleged that the two adult defendants, Tucker and Miller, were negligent by furnishing alcoholic beverages to the other minor defendants without a doctor's prescription contrary to MCLA 750.141a; MSA 28.336(1), and further that the minor defendants, Skok and Kukulka, were guilty of negligence when they opened a case of beer and handed an open can of beer to the driver of defendants' vehicle in violation of MCLA 436.34; MSA 18.1005, which prohibits consumption of alcoholic beverages on public highways.

Subsequently, defendants filed motions for accelerated judgments in each case. The trial court granted the motions on October 13, 1971, on the grounds advanced by the defendants that: (1) the dramshop act[1] was the plaintiffs' exclusive remedy; (2) the plaintiffs had no remedy inasmuch as the statutes of limitation contained in the act had expired; (3) the statutes governing the furnishing and consuming of alcoholic beverages were not applicable to plaintiffs' cause of action; and finally, (4) the act of handing a can of beer to the driver of a motor vehicle could not be the proximate cause of an automobile collision.

Plaintiffs appeal all of the bases upon which the trial court relied in granting the accelerated judgments. We will discuss the issues in the order presented below.

1. *Are the provisions of the dramshop act which impose civil liability upon tavern owners likewise*

---

[1] MCLA 436.22; MSA 18.993.

*applicable to private individuals who are not tavern owners?*

Although none of the defendants herein are tavern owners, they argued both at trial and on appeal that the dramshop act provided the plaintiffs' exclusive remedy and that the plaintiffs had no remedy inasmuch as the statute of limitations contained in the act had expired before suit was commenced. The trial court concurred. We disagree.

The dramshop act, MCLA 436.22; MSA 18.993, which is part of the Michigan Liquor Control Act,[2] provides in pertinent part:

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a *right of action* in his or her name *against the person who shall by such selling or giving of any such liquor* have caused or contributed to the intoxication of said person or persons, or who shall have caused or contributed to any such injury * * * ." (Emphasis supplied.)

Therefore, the first question we must decide is whether or not the word "person" contained in the phrase "against the person who shall by such selling or giving", which has been construed to apply to tavern owners, is likewise applicable to private individuals who are not tavern owners.

At the outset it should be noted that we are obliged to construe any words or phrases as they are defined in the Liquor Control Act, unless the context in which they are used shall otherwise require. MCLA 436.2; MSA 18.972.

---

[2] MCLA 436.1 *et seq.;* MSA 18.971 *et seq.*

The word "person" is defined in the Liquor Control Act as "any person, firm, partnership, association or corporation". MCLA 436.2k; MSA 18.972(11).

However, after an extensive review of the cases which have arisen under the dramshop act, we can find no authority which holds the dramshop act applicable to private individuals who are not tavern owners. On the contrary, in *Behnke v Pierson,* 21 Mich App 219, 221 (1970), plaintiff brought suit under the dramshop act against a partnership for the wrongful death of her husband which resulted when his automobile was struck by another driver who had been furnished alcoholic beverages by a partnership at a company party. This Court, in affirming a summary judgment of no cause of action in favor of the defendant, stated:

> "The statute [dramshop act] makes no provision for holding private individuals liable for furnishing intoxicants without pecuniary gain for social courtesy or hospitality reasons."

Similarly, in *LeGault v Klebba,* 7 Mich App 640 (1967), a tavern owner, who was being sued under the dramshop act for the death of plaintiff's son caused through the sale of intoxicating beverages to a person already under the influence of intoxicants, attempted to bring in as third-party defendants private individuals who had furnished the tavern owner's patron alcoholic beverages at a wedding reception earlier the same evening. Again this Court, in affirming the trial court's summary judgment of no cause of action against the third-party defendants, concluded that the dramshop act did not impose any civil liability upon private individuals.[3]

---

[3] It should be cautioned at this juncture that even though the

Moreover, a close reading of the scope of the Liquor Control Act as set forth by the Legislature[4] coupled with an examination of the provisions of the act itself persuades us that the Liquor Control Act, of which the dramshop act is part, was in-

---

*Behnke* and *LeGault* decisions contain language which is helpful in ascertaining the class of persons to whom the dramshop act was intended to apply, their respective holdings affirming summary judgments of no cause of action are neither in point with nor controlling in the instant case.

In *Behnke* and *LeGault,* the private individuals who were not held liable under the dramshop act for furnishing alcoholic beverages as a social courtesy, had not violated any statutes governing alcoholic beverages in so doing. Here the defendants had furnished alcoholic beverages as a social courtesy, albeit in defendant Sampson's automobile; however, in so doing, plaintiffs alleged the defendants violated two penal statutes relating to the use and consumption of alcoholic beverages. *Behnke* and *LeGault* never dealt with this factual situation.

[4] "Alcoholic liquors; regulation and control; enforcement, penalty.

"Sec. 1. Scope of Act. On and after the effective date of this act, it shall be lawful to manufacture for sale, sell, offer for sale, keep for sale, possess and/or transport any alcoholic liquor, as hereinafter defined, including alcoholic liquor used for medicinal, mechanical, chemical or scientific purposes and wine for sacramental purposes, subject to the times, conditions, limitations and restrictions contained herein, and only as provided for in this act.

"Except as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the state of Michigan, including the manufacture, importation, possession, transportation and sale thereof.

"No rule, regulation and/or order made by the commission shall unreasonably discriminate against Michigan manufacturers of alcoholic liquor.

"The sheriffs of the several counties and their deputies and the village marshals, constables, officers or members of the village or city police and members of the department of state police, and inspectors of the commission, are hereby empowered and it is hereby made their duty to see that the provisions of this act and the rules and regulations made or authorized by said commission are enforced within their respective jurisdictions. It shall be their special duty to use their utmost efforts to repress and prevent crime and the violation of any of the provisions of this act. Any officer within the above enumeration who shall wilfully neglect or refuse to perform the duties imposed upon him by this section shall be guilty of a misdemeanor and upon conviction shall be fined not to exceed 500 dollars or imprisoned in the county jail not more than 90 days, or both." MCLA 436.1; MSA 18.971.

tended to regulate the commercial manufacture, importation, possession, transportation, and sale of alcoholic beverages. In short, it was intended to regulate those in the business of manufacturing and distributing alcoholic beverages and not intended to regulate the private individual who furnished alcoholic beverages to another as a social courtesy.

Finally, the very term "dramshop act" which has been used over the years to describe the section of the Liquor Control Act here in question[5] is further evidence that only tavern owners were sought to be held liable under its provisions.[6]

We hold, therefore, that the word "person" contained in the phrase "person who shall by such selling or giving" refers to any person, firm, partnership, association, or corporation engaged in the business of selling alcoholic beverages and does not include private individuals who are not so occupied. See 8 ALR3d, § 2, p 1413.

As part of the question of the applicability of the dramshop act, defendants contend that the dramshop act was the plaintiffs' exclusive remedy. Again we must disagree.

In the recent case of *Manuel v Weitzman*, 386 Mich 157, 164 (1971), the Michigan Supreme Court, quoting with approval from *DeVillez v Schifano*, 23 Mich App 72, 77 (1970), stated:

" 'We hold that the dramshop act affords the exclusive remedy for injuries arising out of an *unlawful sale, giving away, or furnishing of intoxicants. King v Partridge* (1968), 9 Mich App 540, 543.' "

---

[5] MCLA 436.22; MSA 18.993.

[6] "The term 'dramshop' came to describe those establishments where liquor could be sold in measured quantities of less than a gallon." *Duncan v Beres,* 15 Mich App 318, 320, fn 2 (1968).

However, inasmuch as the *Manuel, DeVillez,* and *Partridge* cases were concerned with the liability of tavern owners under the dramshop act, we interpret the language quoted above to mean that the dramshop act provides an injured party his exclusive remedy only against tavern owners. Here none of the defendants are tavern owners; therefore the holding of *Manuel* has no effect on the case at bar.

Therefore, since the dramshop act only applies to commercial vendors of alcoholic beverages, and since none of the defendants herein were so engaged, we conclude that the dramshop act, along with its statute of limitations and exclusive-remedy feature, is wholly inapplicable to the instant case.

In the absence of a dramshop action, plaintiffs must seek redress based upon common-law precepts. The defendants, citing a headnote in Corpus Juris Secundum,[7] assert that "no remedy exists against the dispenser of liquor for injuries and damages resulting from the acts of intoxicated persons except to the extent provided for by statute".

We cannot agree for the reason that the defendants have failed to recognize a more circumscribed rule recognized in the jurisdiction to the effect that it is not a tort to sell or give alcoholic beverages to a strong and able-bodied man. *Manuel v Weitzman, supra; Hollerud v Malamis,* 20 Mich App 748, 754–755 (1969).

Plaintiffs' suit in the instant case is not predicated upon the defendants furnishing alcoholic beverages to a strong and able-bodied man. Rather, plaintiffs' cause of action stems from the

---

[7] 48 CJS, Intoxicating Liquors, § 430, p 716.

defendants' actions of allegedly furnishing intoxicants to minors.

Therefore, the principle which would have barred plaintiffs' suit had the alcohol been furnished to strong and able-bodied men is not in point with and is not controlling in the facts of the case at bar wherein alcohol was dispensed to minors.

2. *Were the statutes governing the use and consumption of alcoholic beverages, relied upon by the plaintiffs, applicable to the present case?*

It is the plaintiffs' position that the adult defendants, Tucker and Miller, were negligent by furnishing intoxicants to the other minor defendants without a doctor's prescription in violation of MCLA 750.141a; MSA 28.336(1), and further that the two minor defendants, Skok and Kukulka, were guilty of negligence by opening a case of beer and handing an open can of beer to the driver of the automobile while it was in motion contrary to MCLA 436.34; MSA 18.1005, which prohibits the consumption of alcoholic beverages on public highways. The trial court ruled both statutes were inapplicable to the plaintiffs' cause of action. We disagree.

In *Jones v Bourrie,* 369 Mich 473 (1963), the Michigan Supreme Court recognized that where there is no liquor control act creating a civil cause of action, but where there are penal provisions governing alcoholic beverages, a common-law cause of action would arise upon a violation of the penal provisions.[8]

Although the Court did not elaborate upon its reasoning, apparently it felt that the penal statutes were enacted in an effort to protect the gen-

---

[8] In *Jones,* the plaintiff was denied relief under this theory since the suit was against a tavern owner and the dramshop act provided the exclusive remedy.

eral public from personal injuries. And further, in the absence of a dramshop action, a violation of these statutes would constitute negligence per se and give rise to a cause of action in much the same way, for example, as violations of the motor vehicle code, MCLA 257.1 *et seq.;* MSA 9.1801 *et seq.,* which was enacted to protect the public from injury, constitute negligence per se and give rise to a cause of action for personal injuries resulting therefrom. See *Krzeminski v Chuslo,* 4 Mich App 310 (1966); *Kalamazoo v Priest,* 331 Mich 43 (1951); *Garbacz v Grand Trunk W R Co,* 323 Mich 7 (1948).

In the instant case, the dramshop act, a liquor-control measure, did not create a cause of action in favor of the plaintiffs (See Issue 1, *supra).* It follows, therefore, under the rationale of *Jones,* that the statutes governing the use and consumption of alcoholic beverages relied upon by the plaintiffs were not only pertinent, but also indispensible to the maintenance of the present action.

3. *Did the trial court err by finding that handing an open can of beer to the driver of a vehicle while it is in motion could not be the proximate cause of a motor-vehicle collision?*

Finally, plaintiffs assert that the minor defendants, Skok and Kukulka, were guilty of negligence when they handed an open container of beer to the driver of the automobile, in which they were riding, in such a manner as to cause the vehicle to swerve across the center line of the roadway and collide with the plaintiffs' automobile. The trial court ruled on defendants' motions for accelerated judgments that handing a can of beer to the driver of an automobile while it was in motion could not be the proximate cause of a motor-vehicle collision. This was error.

It is well settled that the question of proximate cause is ordinarily a question of fact for the jury "to be solved by the exercise of good common sense in consideration of each particular case".[9] See *Comstock v General Motors Corp,* 358 Mich 163 (1959); *Barnebee v Spence Brothers,* 367 Mich 46 (1962); *Selmo v Baratono,* 28 Mich App 217 (1970).

Under the facts of the present case, we are of the opinion that the plaintiffs' claim of proximate causation was properly a question for the jury and not for the trial court.

In view of all the foregoing, we hold that the plaintiffs' pleadings stated a valid cause of action against the defendants and that the trial court's grant of the accelerated judgments was in error.

Reversed and remanded for a trial on the merits.

HOLBROOK, J., concurred.

BORRADAILE, J. *(dissenting in part, concurring in part).* I differ with the majority in that in my opinion MCLA 436.34; MSA 18.1005, has no application here because the plaintiffs did not allege that the defendants consumed alcoholic liquor on the public highways.

Again I differ with the majority in that in my opinion violation of a criminal statute should not always constitute negligence per se although it may. While many jurisdictions do consider violation of a criminal statute as negligence per se, 57 Am Jur 2d, Negligence, § 242, p 625, others have renounced the doctrine of negligence per se, undoubtedly on the ground that not all violations of the criminal law are unreasonable, and held that criminality is only evidence of negligence. Morris,

---

[9] Prosser on Torts (3d ed), Functions of Court and Jury, § 52, p 330.

*The Role of Criminal Statutes in Negligence Actions,* 49 Colum L Rev 21, 34 (1949).

Morris, *supra,* p 23 has stated some reasons why civil liabilities should not always follow violation of a criminal statute.

"Administration of the criminal law often tempers responsibility in ways unparalleled in civil courts. Enactment of statutes may be unpublicized and adequate warning of impending drastic change of the law of negligence may not be given. Criminal statutes may be unwisely severe. And, most important, potentially ruinous civil liability is often inappropriate for minor infraction of petty criminal regulations."

I concur with the majority in reversing and remanding as to those defendants who allegedly violated MCLA 750.141a; MSA 28.336(1), which makes knowingly furnishing alcoholic beverage to a minor without a physician's prescription a misdemeanor, because I think that under the circumstances of this case such statutory violation is sufficient evidence of negligence to make granting an accelerated judgment inappropriate.