Cavanagh, J.
(concurring in part, dissenting in part). At issue in this case is whether an apartment complex landlord owes a duty to its tenants and invitees to respond to an imminent threat of a third party’s criminal act in the common area of the premises by calling the police. Specifically, we must decide whether MacDonald v PKT, Inc, 464 Mich 322; 628 NW2d 33 (2001), applies to landlords. To the extent that the majority holds that landlords owe their tenants and invitees the duty established by a majority of this Court in MacDonald, I agree. However, I respectfully disagree with the majority’s analysis, and its decision to limit the holding of Samson v Saginaw Prof Bldg, Inc, 393 Mich 393, 409; 224 NW2d 843 (1975). In my judgment, the majority fails to sufficiently analyze the nature of the relationship between a landlord and the landlord’s tenants and invitees, where that relationship defines the nature of a landlord’s duty.
I. PREMISES PROPRIETORS’ DUTY TO PROTECT ANOTHER
A. GENERAL PRINCIPLES
Generally, the law may recognize a tort duty where *622 “the relationship between the actor and the injured person gives rise to [a] legal obligation on the actor’s part for the benefit of the injured person.” Moning v Alfono, 400 Mich 425, 438-439; 254 NW2d 759 (1977). In determining whether there is a legal obligation on the part of the actor that the law will recognize, often the question of duty will turn on a number of different factors, “including foreseeability of the harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and. . . the burdens and consequences of imposing a duty and the resulting liability for breach.” Valcaniant v Detroit Edison Co, 470 Mich 82, 86; 679 NW2d 689 (2004) (citations and quotation marks omitted). The nature of the parties’ relationship is critical in determining whether that relationship created the existence of a legal obligation because it is a basic principle of negligence law that, as a general rule, “there is no duty that obligates one person to aid or protect another.” Williams v Cunningham Drug Stores, Inc, 429 Mich 495, 498-499; 418 NW2d 381 (1988), citing 2 Restatement Torts, 2d, § 314, p 116. A duty to protect another may nevertheless be imposed when a special relationship exists between a defendant and a plaintiff. Id. at 499, citing 2 Restatement Torts, 2d, § 314A, p 118.[1]
*623 As we stated in Williams, the duty to protect may impose liability from passive inaction, or nonfeasance, and “[t]he common law has been slow in recognizing liability for nonfeasance because the courts are reluctant to force persons to help one another and because such conduct does not create a new risk of harm to a potential plaintiff.” Williams, 429 Mich at 498. However, Williams further explained that “[s]ocial policy . .. has led the courts to recognize an exception to [the general rule that there is no duty to protect another] where a special relationship exists between a plaintiff and a defendant.” Id. at 499. This Court has also held that “[d]uty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.” Buczkowski v McKay, 441 Mich 96, 100-101; 490 NW2d 330 (1992) (quotation marks omitted), quoting Prosser & Keeton, Torts (5th ed), § 53, p 358.[2]
*624 Despite the common law’s reluctance to impose a duty to protect another, Williams noted that, in the past, the duty to protect may apply to a common carrier and its passengers, an innkeeper and its guests, and an employer and its employees, explaining that
[t]he rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety. Williams, 429 Mich at 499 (citations omitted).]
B. MERCHANTS AND LANDLORDS
It is true that “Michigan courts recognize a duty of care that arises solely from the possession of land . . ..” Kessler v Visteon Corp, 448 F3d 326, 331 (CA 6, 2006); see also Bertrand v Alan Ford, Inc, 449 Mich 606, 609; 537 NW2d 185 (1995) (“Essentially, social policy imposes on possessors of land a legal duty to protect their invitees on the basis of the special relationship that exists between them.”). In fact, Williams explained that “[o]wners and occupiers of land are in a special relationship with their invitees and compromise the largest group upon whom an affirmative duty to protect is imposed.” Williams, 429 Mich at 499. Williams supported that assertion by explaining that landlords may be held liable for an unreasonable risk of harm caused by a dangerous condition of the land in the common areas of the premises, and merchants also have a duty to reasonably maintain the physical structures on their premises. Id. at 499-500, citing 2 Restatement Torts, *625 2d, §§ 343, 360, and Johnston v Harris, 387 Mich 569; 198 NW2d 409 (1972). Plaintiff, on the other hand, asserts that defendant landlords owed him a duty to protect against imminent third-party criminal conduct that was not the result of or facilitated by the landlord’s failure to maintain the physical premises. Specifically, the duty that plaintiff seeks to impose on defendant landlords in this case is identical to the duty that a majority of this Court imposed on the defendant merchant in MacDonald.[3] The MacDonald Court, however, only considered whether the scope of a merchant’s duty established in Mason v Royal Dequindre, Inc, 455 Mich 391; 566 NW2d 199 (1997), remained valid and did not consider the justification for the imposition of the duty itself. In Mason, we held that merchants owe the duty to protect a “ ‘readily identifiable [invitee who is] fore-seeably endangered’ ” from unreasonable risks of harm. Id. at 398, quoting Murdock v Higgins, 454 Mich 46, 58; 559 NW2d 639 (1997). Mason explained that this Court has “recognized that merchants may have a common-law duty to protect their patrons from the criminal acts of other patrons,” 455 Mich at 399, citing Manuel v Weitzman, 386 Mich 157; 191 NW2d 474 (1971), and held that, generally, merchants have a duty to protect their invitees because of their special relationship. Mason, 455 Mich at 397-398, 405, citing Williams, 429 Mich at 498-500, and Mason, 455 Mich at 397 n 2, quoting 2 Restatement Torts, 2d, § 314A, p 118. See also Mason, 455 Mich at 398-399, quoting 2 Restatement Torts, 2d, § 344, pp 223-224.
*626 While our prior cases involving owners and occupiers of land clearly demonstrate that merchants share a special relationship with their invitees, giving rise to the duty to protect, our caselaw is not so clear as it pertains to a landlord’s duty to protect its tenants and invitees. Notably, while several Michigan cases that address the duty to protect to prevent harm to another in various circumstances have mentioned that landlords and tenants share a special relationship, we have yet to provide a justification for the duty. See, e.g., Murdock, 454 Mich at 55 n 11, Dawe v Dr Reuven Bar-Levav & Assoc, PC, 485 Mich 20, 26 n 3; 780 NW2d 272 (2010), Holland v Liedel, 197 Mich App 60, 63; 494 NW2d 772 (1992), and Dykema v Gus Macker Enterprises, Inc, 196 Mich App 6, 8; 492 NW2d 472 (1992). Moreover, it is not clear from our prior cases involving only a merchant’s duty to protect another from the criminal conduct of a third party that this Court has assumed that merchants and landlords have synonymous duties as premises owners. Rather, we have indicated that a landlord’s relationship with its tenants may differ from a merchant’s relationship with its invitees. See Williams, 429 Mich at 502 n 17 (explaining that landlords have more control over their relationships with their tenants than merchants do with their invitees); Scott v Harper Recreation, Inc, 444 Mich 441, 452 n 15; 506 NW2d 857 (1993) (expressly declining to address whether its holding should be extended to the landlord-tenant context).[4]
*627 Before Williams was decided, Samson recognized that a special relationship exists between a landlord and its tenants.[5] Samson, 393 Mich at 409. In Samson, a landlord of a commercial building leased office space to a mental health clinic. Samson upheld a jury verdict that imposed liability on the landlord for failing to protect against the harms posed by the mental health clinic’s patients within the common areas of the building. Id. at 408-409. Samson reasoned that a landlord retains responsibility for the common areas of the premises that are not leased to tenants, and no one but the landlord remains responsible for those areas; thus, “[i]t is [the landlord’s] responsibility to insure that these areas are kept in good repair and reasonably safe for the use of his tenants and invitees.” Id. at 407.
However, Samson’s basis for upholding the landlord’s duty is arguably unclear. Justice MARKMAN argues that Samson is distinguishable because it involved a commercial landlord, not a residential landlord, and Samson cited to § 314A(3) of the Restatement, which addresses premises owners who hold their land open to the public. Samson, 393 Mich at 407. Also, commentators have surmised that the duty imposed in Samson may be characterized as arising out of the defendant’s act of leasing the premises to a potentially dangerous tenant. Dobbs, The Law of Torts, § 325, p 880 n 5 (citing Samson and explaining that some jurisdictions impose a duty on a landlord if the landlord helped create the danger that harmed the plaintiff).[6] Thus, *628 absent clear direction from our prior caselaw, I think that the nature of the landlord-tenant relationship must be considered in deciding whether that relationship justifies the imposition of the duty established under MacDonald.
II. MACDONALD APPLIES TO LANDLORDS
I would hold that landlords share a special relationship with their tenants and invitees, which implicates a landlord’s duty to protect against the conduct of third parties that poses an imminent and foreseeable risk of harm within the common areas of the premises. Specifically, I would hold that the minimal duty that MacDonald imposed on merchants applies to landlords on the basis of the landlord-tenant relationship.
Historically, the general rule against imposing liability on a person for failing to protect another may have precluded the existence of a landlord’s duty to protect in light of the original nature of leaseholds. See Trentacost v Brussel, 82 NJ 214, 225; 412 A2d 436 (1980) (“Leases acquired the character of conveyances of real property when their primary function was to govern the relationship between landowners and farmers. Unlike the original, medieval tenant, the modern apartment dweller rents not for profit but for shelter.”). Also, § 314A of the Restatement, which establishes a non-exhaustive list of special relationships that may serve the basis for the imposition of the duty to protect another, expressly includes the relationships between a merchant, or one who holds his land open to the public, and his invitees, and an innkeeper and his guests but is silent on the *629 relationship between a landlord and tenant. 2 Restatement Torts, 2d, § 344(2), (3), and comment b, p 118.
However, in my judgment, the modern landlord-tenant relationship shares characteristics of both an innkeeper and a premises owner who holds his land open to the public. Landlords, particularly those of larger multi-complex properties, are analogous to innkeepers as to the common areas of the premises because of the reasonable expectation that landlords will provide some degree of supervision and control over the activities occurring within the common areas. See Kline v 1500 Mass Avenue Apartment Corp, 439 F2d 477, 482 (CA DC, 1970) (comparing a modern landlord to an innkeeper and noting that liability in the innkeeper-guest relationship may be based on the “innkeeper’s supervision, care, or control of the premises”), and id. at 481 (“The landlord is no insurer of his tenants’ safety, but he certainly is no bystander.”). Further, both residential and commercial landlords open their land for their own pecuniary benefit, similar to a merchant’s use of its land. Moreover, while the common areas of a residential landlord’s premises may be restricted as to who may enter the land comparative to the public areas of a merchant’s premises, that restriction is minimal considering that any tenant may bring third parties within the common areas of the property. Because landlords share a special relationship with their tenants and invitees, just as merchants share with their invitees, I would hold that the MacDonald duty applies to landlords.
Notably, applying MacDonald to the landlord-tenant context does not contravene the central holding in Williams — that a premises proprietor does not have a duty to essentially provide police protection. Williams, 429 Mich at 501-503. In Williams, we considered the *630 question “whether a merchant’s duty to exercise reasonable care includes providing armed, visible security guards to protect invitees from the criminal acts of third parties.” Id. at 500. The plaintiff in Williams argued that because the defendant drug store owner had not provided a security guard, as it had routinely done in the past, the defendant had breached its duty of care by not intercepting the armed robbery that occurred at the store and resulted in the plaintiffs injuries. Id. at 497. Williams held that a merchant does not have a duty to provide visible guards as a crime deterrent because that duty would amount to a duty to provide police protection. Id. at 501. Williams reasoned that a merchant is not the “insurer of the safety of his invitees” and “cannot control the incidence of crime in the community.” Id. at 502.
As MacDonald recognized, “[m]erchants do not have effective control over situations involving spontaneous and sudden incidents of criminal activity.” MacDonald, 464 Mich at 337 (emphasis added). However, when the facts of the case illustrate that the premises’ proprietor has notice of a foreseeable risk to an identifiable tenant or invitee, the criminal activity is no longer random, as contemplated by Williams. See Williams, 429 Mich at 501 n 15 (explaining that the facts of Williams did not compel an application of a merchant’s duty to protect its invitees against physical harm caused by the intentional acts of third parties under 2 Restatement Torts, 2d, § 344, pp 223-224). Thus, applying MacDonald to defendants as landlords is consistent with Williams’s holding, which declined to impose a general duty on a merchant to place security on the premises in the first instance to protect its invitees against any crime that may occur in the community. See also Mills v White Castle Sys, Inc, 167 Mich App 202, 208; 421 NW2d 631 (1988) (holding that Williams’s policy rationale did not *631 preclude the plaintiffs negligence claim because the plaintiff argued that the defendant merchant should have summoned the police, not that the defendant should have provided police protection).
Additionally, assuming that Scott, 444 Mich 441, is applicable in this case, applying MacDonald to the landlord-tenant context does not conflict with the underlying principles of Scott. The Scott plaintiff alleged that the defendant merchant voluntarily assumed the duty to protect the plaintiff against the criminal acts of a third party by advertising that that lot was “lighted” and “guarded” and that the defendant breached that duty by failing to provide adequate security, which resulted in the plaintiffs injuries from a criminal attack. Id. at 449. Scott held that “[s]uit may not be maintained on the theory that the safety measures are less effective than they could or should have been,” reasoning that “ '[s]uch a policy would penalize merchants who provide some measure of protection, as opposed to merchants who take no measures.’ ” Id. at 452, quoting Tame v A L Damman Co, 177 Mich App 453, 457; 442 NW2d 679 (1989). Scott also “rejected] the notion that a merchant who makes property visibly safer has thereby ‘increased the risk of harm’ by causing patrons to be less anxious.” Scott, 444 Mich at 451.
However, in this case, defendants’ voluntary decision to employ security guards is not the basis for the imposition of the landlords’ duty. Rather, the placement of the security guards on the premises simply serves as the means by which defendants acquired notice of Schaaf s impending criminal behavior. Indeed, if it is determined that defendants are vicariously liable for the security guards’ inaction, it would be as if the defendants themselves were called on to notify the *632 police of Schaafs conduct.[7] Also, contrary to Justice Markman’s assertion, in applying MacDonald to defendant landlords in this case, I do not rely on the premise that tenants and invitees are lulled into a sense of safety via the placement of the security measures on the property to justify the imposition of the duty to protect on a landlord. Rather, the landlord’s duty stems from the special relationship that the tenant and the landlord share, which is primarily based on the reasonable expectations that society places on the modern day landlord.
III. CONCLUSION
I would hold that MacDonald applies to the landlord-tenant context, which simply required defendant-landlords to call the police if they were aware of an ongoing situation that posed an imminent risk of harm to defendants’ tenants and invitees. To justify the imposition of that duty, I think that the nature of the landlord-tenant relationship must be analyzed because it is the critical factor to be considered when imposing a duty to protect another. Further, in my view, our *633 caselaw regarding a merchant’s duty to protect its invitees from the conduct of a third party has either been silent or expressly declined to opine as to whether a landlord has a similar duty to protect its tenants and invitees. Thus, while I agree with the majority to the extent that it holds that MacDonald applies to defendants in this case, I respectfully disagree with the majority’s approach to this case.

 If a legal obligation exists arising out of the parties’ special relationship, other inquiries remain relevant in determining whether a particular duty or standard of care is owed to a plaintiff See Murdock v Higgins, 208 Mich App 210, 215; 527 NW2d 1 (1994), aff'd 454 Mich 46 (1997) (citations and quotation marks omitted) (“In order to determine whether a ‘special relationship’ giving rise to a legal duty to act exists in a particular case, this Court has held that it is necessary to balance the societal interests involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence, and the relationship between the parties. ... Other factors which may give rise to a duty include the foreseeability of the [harm], the defendant’s ability to comply with the *623 proposed duty, the victim’s inability to protect himself from the harm, the costs of providing protection, and whether the plaintiff had bestowed some economic benefit on the defendant.”). See, also, Dobbs, The Law of Torts, § 317, p 859 (“Even if a duty to take reasonable [active] action is recognized, liability is by no means a foregone conclusion. The exact conduct that reasonable care would demand may vary according to the relationship and circumstances.”).

 See, also, Harper & Kime, The Duty to Control the Conduct of Another, 43 Yale L J 886, 905 (1934) (stating that the policies justifying the imposition of the duty to protect “reflect the general attitude of the community; they represent for the most part the popular notions of what constitutes proper assumptions on the part of one person when dealing with another. The common law attempts to interpret these communal reactions and to crystallize them into rules of law. As business and social relations become more and more complicated, these reactions are modified on the one hand and extended on the other. This requires modification and extension of the common law. The principles governing the duty of one person to control the conduct of another have this general elasticity which characterizes other principles of tort law. ... If... the relationship of the parties appears to be, for all practical social purposes, *624 indistinguishable from the type of cases which have been included under these general divisions [of either a special relationship or special circumstances], tort law may add another cubit to the stature which it has acquired over centuries of constant growth.”).

 I continue to adhere to my dissenting opinion in MacDonald. See MacDonald, 464 Mich at 346-358 (Cavanagh, J., dissenting). However, my dissenting opinion is not implicated in this case because plaintiff only argues that a minimal duty, as defined by the MacDonald majority, applies to defendants.

 The majority asserts that Williams “refused to apply Samson to the merchant-invitee special relationship.” Ante at 611 n 44. In my view, Williams simply noted Samson’s holding to provide a similar comparison between merchants to landlords, and thus evidences the fact that our caselaw may not have treated the duties of all premises proprietors as coextensive.

 Some Court of Appeals panels have cited Samson for the general proposition that landlords and tenants share a special relationship. See, e.g., Holland, 197 Mich App at 63.

 In my view, it is unnecessary for the majority to limit Samson’s holding in light of MacDonald’s limitation on the scope of a merchant’s duty to protect its invitees. The only question that is currently before us is whether defendant landlords owed plaintiff the minimal duty as *628 articulated by the MacDonald majority. See MacDonald, 464 Mich at 338. Moreover, as Justice Markman recognizes, the duties at issue in Samson and MacDonald appear distinguishable.

 I disagree with Justice Markman’s prediction that by imposing on landlords the minimal duty under MacDonald, landlords will completely avoid the common areas of the premises. The duty to reasonably expedite police involvement when on notice of imminent harm to an identifiable invitee or tenant is not an impossible task. In fact, the burden of this duty is slight, particularly when compared to the risk of harm, i.e., the loss of life. Weighing the burden of the duty against the desirability of avoiding the harm is consistent with the factors that this Court considers when imposing any tort duty. As a practical matter, it seems quite obvious that landlords will choose to be actively present, thereby increasing the value of their rental properties, over avoiding their properties simply because they feel it is overly burdensome to potentially have to notify the police of an imminent risk of harm of which they are aware. Such a simple act is likely something that many landlords would already feel obligated to do absent the majority’s holding today and why it should be an actionable wrong to avoid this duty.