JACKSON v PKM CORPORATION

Docket No. 80107. Argued January 7, 1988 (Calendar No. 2). Decided
April 26, 1988.

Deborah L. Jackson brought an action in the Macomb Circuit
Court against the PKM Corporation, seeking damages for inju-
ries sustained in an automobile accident while driving home
from the defendant's tavern and alleging that the defendant
knew that she was a compulsive, habitual alcoholic, and was
grossly negligent and acted wilfully, wantonly, intentionally,
and recklessly in furnishing her intoxicating beverages. The
court, George R. Deneweth, J., granted summary judgment for
the defendant, ruling that the dramshop act provides the
exclusive remedy against a licensee for injuries arising out of
the unlawful sale or furnishing of intoxicating beverages. The
Court of Appeals, GRIBBS, P.J., and HOOD and FERGUSON, JJ.,
reversed in an opinion per curiam, holding that the dramshop
act's exclusive remedy provision applied only to the rights of
innocent third parties wrongfully injured by an intoxicated
party and did not bar the plaintiff's common-law action to
recover for her own injuries. It further held that where the
facts alleged are sufficient to constitute both gross negligence
and actual notice of the plaintiff's condition, the complaint
states a valid cause of action. The Court of Appeals certified
that its decision was in conflict with *Gregory v Kurtis,* 108
Mich App 443 (1981), and *Lucido v Apollo Lanes & Bar, Inc,*
123 Mich App 267 (1983) (Docket No. 88606). The defendant
appeals.

In an opinion by Chief Justice RILEY, joined by Justices
LEVIN, BRICKLEY, CAVANAGH, BOYLE, and GRIFFIN, the Supreme
Court *held:*

An intoxicated person who is injured as a result of intoxica-

REFERENCES

Am Jur 2d, Intoxicating Liquors § 580.

Liability of persons furnishing intoxicating liquor for injury to or
death of consumer, outside coverage of civil damage acts. 98
ALR3d 1230.

Liability of liquor furnisher under civil damage or dramshop act for
injury or death of intoxicated person from wrongful act of a third
person. 65 ALR2d 923.

tion is precluded by the exclusive remedy provision of the dramshop act from bringing an action for gross negligence or wilful, wanton, and intentional misconduct against the liquor licensee that furnished the intoxicating liquor.

1. The dramshop act affords the exclusive remedy for innocent third parties to recover from tavern owners for injuries arising out of an unlawful sale, giving away, or furnishing of intoxicants. The act was intended to be a complete and self-contained solution to a problem not adequately addressed at common law. In striking the balance between the rights of persons injured under dramshop-related facts and the extent of a tavern owner's liability, the Legislature chose to omit intoxicated persons as a class protected by the act, and the choice is indicative of an intent that the intoxicated person should not be afforded a remedy. The omission does not evince an intention to permit intoxicated persons, regardless of condition or degree of intoxication, to pursue other common-law theories of liability which would effectively afford such persons greater rights and avenues of recovery than those available to innocent third parties. Where a claim arises out of conduct other than the selling, giving away, or furnishing of intoxicants by a tavern owner which is recognized at common law as a cause of action in negligence, the dramshop act neither abrogates nor controls the common-law action.

2. In this case, the action arose out of the defendant's unlawful furnishing of intoxicants to the plaintiff. Thus, her common-law action for gross negligence is preëmpted by the exclusive remedy of the dramshop act.

Reversed.

Justice ARCHER, concurring in part, stated that while the Legislature intended the dramshop act to provide the exclusive remedy for injuries arising out of the unlawful sale, giving away, or furnishing of intoxicants, the administration of justice is hampered by the preclusion of actions by visibly intoxicated patrons against the grossly negligent conduct of tavern owners. In this case, a cause of action for gross negligence should be available. After the plaintiff became visibly intoxicated, the defendant was in the best position to halt the plaintiff's drinking at the least cost to society, and thus had a duty to stop serving her intoxicants. The Legislature should consider amending the dramshop act to provide such a remedy.

157 Mich App 138; 403 NW2d 106 (1987) reversed.

*Grasser v Fleming,* 74 Mich App 338; 253 NW2d 757 (1977), overruled.

*Morris v Markley,* 143 Mich App 12; 371 NW2d 464 (1985), overruled.

INTOXICATING LIQUORS — DRAMSHOP ACT — EXCLUSIVE REMEDY —
    INTOXICATED PERSONS.

    An intoxicated person who is injured as a result of intoxication is
    precluded by the exclusive remedy provision of the dramshop
    act from bringing an action for gross negligence or wilful,
    wanton, and intentional misconduct against the liquor licensee
    that furnished the intoxicating liquor (MCL 436.22; MSA
    18.993).

*Law Offices of Brochert & Ward* (by *David S. Anderson* and *Linda M. Garbarino*) for the plaintiff.

*Valenti, Bolger & Gorcyca* (by *Andrew F. Valenti*) and *Law Offices of David L. Moffitt* (by *David L. Moffitt,* of counsel) for the defendant.

Amici Curiae:

*Kallas, Lower, Henk & Treado, P.C.* (by *Constantine N. Kallas* and *Eric D. Smith*), for Bowling Proprietors of Michigan and Michigan Licensed Beverage Association.

*Libner, VanLeuven & Kortering, P.C.* (by *John A. Braden*), for Michigan Trial Lawyers Association.

RILEY, C.J. We granted leave to appeal in this case to resolve a split of authority in the Court of Appeals as to whether the exclusive remedy of the dramshop act, MCL 436.22; MSA 18.993, precludes an intoxicated party, who is injured as a result of his intoxication, from bringing an action for gross negligence or wilful, wanton, and intentional misconduct against the liquor licensee that furnished him the intoxicating liquor. We hold that plaintiff's gross negligence claim, which arose out of the unlawful sale, giving, or furnishing of intoxicants,

is preëmpted by the exclusive remedy of the dramshop act.

## I

### FACTS

In September, 1982, plaintiff was seriously injured in a single vehicle accident while she was allegedly driving home from defendant's tavern. Plaintiff filed a complaint against the defendant to recover for her injuries. The complaint alleged that for several hours prior to the accident, plaintiff was a patron at defendant's tavern. During that time, she consumed excessive amounts of intoxicating liquors which rendered her visibly intoxicated and completely unable to safely operate a motor vehicle. The complaint further alleged that defendant knew or should have known that plaintiff was a compulsive, habitual alcoholic and that defendant was grossly negligent and acted wilfully, wantonly, intentionally, and recklessly in furnishing intoxicating beverages to her.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8), maintaining that plaintiff failed to state a valid claim. On October 8, 1985, the trial court granted defendant's motion. While noting a split of authority in the Court of Appeals, the trial court ruled that the dramshop act, MCL 436.22; MSA 18.993, provides the exclusive remedy against a licensee for injuries arising out of the unlawful sale or furnishing of intoxicating beverages.

The Court of Appeals reversed the trial court's ruling and held that the dramshop act's exclusive remedy applied only to the rights of innocent third parties wrongfully injured by an intoxicated party and did not operate to bar plaintiff's common-law

action to recover for her own injuries.[1] The Court ruled that where the facts alleged are sufficient to constitute both gross negligence and actual notice of the plaintiff's condition, the complaint states a valid cause of action.[2] The Court of Appeals certified that its decision was in conflict with its prior decisions in *Gregory v Kurtis,* 108 Mich App 443; 310 NW2d 415 (1981), and *Lucido v Apollo Lanes & Bar, Inc,* 123 Mich App 267; 333 NW2d 246 (1983), lv den 417 Mich 1087 (1983), pursuant to Administrative Order No. 1984-2.

This Court granted defendant's application for leave to appeal, limited to the issue whether plaintiff's claim for negligent or wilful serving of intoxicants states a cause of action outside MCL 436.22; MSA 18.993.[3]

## II

### COMMON-LAW LIABILITY OF TAVERN OWNERS

The law of this state is in conflict concerning the liability of tavern owners for injuries suffered by one of their intoxicated patrons as the proximate result of the patron's wrongful intoxication. The general rule at common law was that a tavern owner was not liable for furnishing alcoholic beverages to a customer who became intoxicated and who, as a result of his own intoxication, either injured himself or an innocent third person.[4] The rationale generally advanced to sustain this rule was that the consumption of the liquor, not the serving of it, was the proximate cause of the

---

[1] *Jackson v PKM Corp,* 157 Mich App 138, 143; 403 NW2d 106 (1987).

[2] *Id.*

[3] 428 Mich 910 (1987).

[4] 45 Am Jur 2d, Intoxicating Liquors, § 553, p 852; Harden, *Dram-shop liability: Should the intoxicated person recover for his own injuries?,* 48 Ohio St L J 227-228 (1987).

injury.[5] Furthermore, with regard to claims by the intoxicated customer, there was the additional defense of contributory negligence.[6]

A few jurisdictions recognized a very narrow exception to the general rule of nonliability to the intoxicated person in a very limited number of unusual cases where the consumer could be said to have lost his free will, i.e., he was either an alcoholic or intoxicated to the point of helplessness and such condition was either known to the purveyor of the liquor or should have been.[7] However, such an exception was never recognized in this jurisdiction, and it is well established that under the common law of this state it was not a tort to sell or furnish intoxicating liquor to an ordinary and able-bodied person, even though such intoxication resulted in injury to the intoxicated person or others. *Millross v Plum Hollow Golf Club,* 429 Mich 178, 183; 413 NW2d 17 (1987); *Manuel v Weitzman,* 386 Mich 157, 163; 191 NW2d 474 (1971).

Several states, including Michigan, enacted dramshop acts to fill the void left by the common law's general rule of nonliability.[8] Under this

[5] *Id.*

[6] King, *Common law liability of the liquor vendor,* 18 Western Res L R 251-252 (1966).

[7] *Hollerud v Malamis,* 20 Mich App 748, 760, n 24; 174 NW2d 626 (1969). See also n 6 *supra* at 253.

[8] *Millross, supra* at 184; *Longstreth v Gensel,* 423 Mich 675, 684; 377 NW2d 804 (1985). At the time this incident arose, Michigan's dramshop act provided in pertinent part:

(5) A wife, husband, child, parent, guardian, or other person injured in person, property, means of support, or otherwise, by a visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of intoxicating liquor to the person, if the sale is proven to be a proximate cause of the injury or death, shall have a right of action in his or her name against the person who by the selling, giving, or furnishing the liquor has caused or contributed to the intoxication of the person or who

state's dramshop act, the intoxicated person himself and those who contributed to his intoxication have no right of action under the act. *Kangas v Suchorski,* 372 Mich 396, 401; 126 NW2d 803 (1964); *Plamondon v Matthews,* 148 Mich App 737, 740; 385 NW2d 273 (1985). The inability of the intoxicated person to recover under the act has resulted in such persons attempting to recover damages from the tavern owner under a common-law theory of liability sounding in gross negligence. These efforts raised the question whether the Legislature, in enacting the dramshop act, intended the act to be the exclusive remedy against a tavern owner, thereby preëmpting other theories of common-law liability.

### III

#### SPLIT OF AUTHORITY IN THE COURT OF APPEALS

The present split of authority within the Court of Appeals over whether an intoxicated person may maintain a cause of action outside the dramshop act for gross negligence or wilful, wanton, and intentional misconduct in selling or furnishing intoxicating liquor to an alcoholic or an individual in a helpless condition, when such sale or furnishing causes injury to that person, stems from this Court's decision in *Manuel v Weitzman.* In *Manuel,* the plaintiff sued the defendant tavern owner for injuries he sustained after being assaulted by another customer on the defendant's premises. In addition to bringing two counts under the dramshop act, the plaintiff also alleged that the defendant's liability stemmed from his common-law duty to maintain a safe premises. The trial court

has caused or contributed to the injury. [MCL 436.22(5); MSA 18.993(5).]

dismissed the latter count, ruling that the dram-shop act provided the exclusive remedy against a tavern owner for injuries inflicted by an intoxicated customer. *Id.* at 161.

The *Manuel* Court reversed the trial court's ruling. In adopting the following language from *DeVillez v Schifano,* 23 Mich App 72; 178 NW2d 147 (1970), the *Manuel* Court held:

> "We hold that the dramshop act affords the exclusive remedy for injuries arising out of an unlawful sale, giving away, or furnishing of intoxicants. *King v Partridge* (1968), 9 Mich App 540, 543 [157 NW2d 417]. However, the act does not control and it does not abrogate actions arising out of unlawful or negligent conduct of a tavern owner other than selling, giving away, or furnishing of intoxicants, provided the unlawful or negligent conduct is recognized as a lawful basis for a cause of action in the common law." [*Id.* at 164-165.]

The plaintiff's common-law claim based on the defendant's failure to maintain a safe premises was not contingent on or necessarily related to establishing the defendant tavern owner's negligence in furnishing intoxicants to the customer who assaulted the plaintiff. Thus, the Court concluded that the exclusive remedy of the dramshop act did not bar the plaintiff's independent common-law negligence claim.

The *Manuel* Court's holding that independent common-law claims were not abrogated by the dramshop act led to what we believe was an erroneous decision by the Court of Appeals in *Grasser v Fleming,* 74 Mich App 338; 253 NW2d 757 (1977). In *Grasser,* the complaint alleged that the defendant tavern owner had actual notice that the plaintiff's decedent was a compulsive alcoholic and had agreed with the plaintiff not to serve the

decedent any intoxicating beverages. The alleged agreement was not honored, and the plaintiff's decedent was fatally injured after becoming extremely intoxicated at the defendant's tavern. The plaintiff's complaint alleged a cause of action against the defendant tavern owner for gross negligence and wilful, wanton, and intentional misconduct for serving the decedent alcoholic beverages.

On appeal from a denial of the defendant's motion for summary judgment on the gross negligence claim, the *Grasser* Court expressed doubt as to whether the holding in *Manuel* precluded the plaintiff's common-law action for gross negligence. *Id.* at 345. In concluding that it did not, the *Grasser* Court noted: 1) *Manuel* concluded that some independent common-law negligence actions may be maintained outside the dramshop act's exclusive remedy; 2) although *Manuel* recognized that it was not a tort at common law to furnish intoxicating liquor to an able-bodied man, the plaintiff in the case before the Court was an elderly and sick man; 3) the narrow exception to the general common-law rule is recognized by some jurisdictions where the intoxicated person was in such a helpless state as to have lost his free will; and 4) finally, it would be inequitable to deny the plaintiff a remedy under the circumstances presented. *Id.* at 345-346.

We conclude, however, that the *Grasser* Court's reasoning was flawed in that it failed to observe *Manuel's* express holding that the dramshop act affords the exclusive remedy for "injuries arising out of an unlawful sale, giving away, or furnishing of intoxicants." *Manuel, supra* at 164-165. Cf. *Gregory v Kurtis.* The complaint in *Grasser* alleged that the plaintiff's decedent was already intoxicated when the defendant tavern furnished

the decedent further intoxicating beverages. Therefore, such furnishing was unlawful and his fatal injury clearly arose out of that misconduct. Thus, under *Manuel,* the plaintiff's common-law claim was preëmpted by the dramshop act's exclusive remedy.

Subsequent to *Grasser,* this Court again addressed the scope of the exclusive remedy of the dramshop act, albeit in a different context, in *Browder v Int'l Fidelity Ins Co,* 413 Mich 603; 321 NW2d 668 (1982). In *Browder,* the issue was whether the plaintiff could bring an action against the defendant tavern owner's surety on the defendant's class c liquor bond on a contract theory outside the dramshop act. The plaintiff had filed an amended complaint adding the defendant insurer outside the dramshop act's two-year limitation period and was seeking to benefit from the six-year limitation period for contract actions.

In determining that the dramshop act barred the plaintiff's contract claim and provided the exclusive limitation period, the *Browder* Court closely examined the act's pertinent provisions to reach its conclusion that the Legislature intended the act to provide the exclusive remedy for any action arising under dramshop-related facts. The Court stated:

> In summary, we find that the Legislature intended the dramshop act to be a complete and self-contained solution to a social problem not adequately addressed at common law. The plain and unambiguous language, together with the built-in checks and balances adopted by the Legislature to finely hone the rights and obligations of the parties under the act, lead to only one conclusion: the Legislature intended the statutory action of trespass on the case to be the exclusive remedy and "any action" arising under dramshop-related facts to be instituted within two years. [*Id.* at 615-616.]

Notwithstanding this Court's holding in *Browder,* a split of authority continued to develop in the Court of Appeals as to whether an intoxicated person could maintain a common-law action, sounding in gross negligence, outside the dramshop act to recover for injuries sustained under dramshop-related facts. In *Lucido v Apollo Lanes & Bar, Inc, supra* at 271, the first panel to consider the question subsequent to *Browder,* the Court dismissed the intoxicated party's claim, citing *Browder* and *Manuel, supra,* as controlling authority, reasoning that the Legislature had preëmpted the field and that the dramshop act provided the exclusive remedy.

However, a second panel of the Court of Appeals found *Browder* and *Manuel* to be distinguishable because those cases pertained to the rights of innocent third parties. *Morris v Markley,* 143 Mich App 12; 371 NW2d 464 (1985). In *Morris,* the plaintiff, an exotic dancer employed by the defendant tavern owner, sustained serious injury in a motor vehicle accident after being served intoxicating beverages while she was working. Similar to the instant case, the plaintiff contended that the defendant knew she was an alcoholic and brought an action against the defendant on a common-law gross negligence theory. The *Morris* Court reasoned that the holdings in *Browder* and *Manuel* concerning the exclusive remedy of the dramshop act only extended to the rights of innocent third parties because that class of claimants is expressly provided for in the act while the act is silent with regard to the rights of intoxicated persons. Furthermore, the Court viewed the action as not arising from the unlawful furnishing of liquor to the plaintiff, but rather from the defendant's reckless disregard of the plaintiff's welfare after the defendant had actual notice of the plaintiff's help-

less condition. The Court indicated that its holding constituted a very limited exception to the general rule of nonliability to the intoxicated person. *Id.* at 15. Finding special significance in the fact that the plaintiff and the defendant were in an employee-employer relationship, the Court held:

> We hold that, in those circumstances where facts are alleged sufficient to constitute both gross negligence and actual notice of plaintiff's condition that would make the serving of alcohol wilful, wanton and intentional and a reckless disregard of plaintiff's helpless condition, the claim should be allowed to have a full trial. [*Id.*]

The Court of Appeals panel in the instant case agreed with the *Morris* Court that where the facts alleged are sufficient to constitute both gross negligence and actual notice of the plaintiff's helpless condition, the complaint states a valid cause of action.[9] The Court also similarly viewed the dramshop act's exclusive remedy to be limited to the rights of innocent third parties to recover from the tavern owner.[10]

## IV

### ANALYSIS

Subsequent to the Court of Appeals decision in this case, this Court reexamined the extent of the dramshop act's exclusive remedy and the nature of the common-law liabilities a tavern owner remains subject to under *Manuel* in *Millross v Plum Hollow Golf Club.* In *Millross,* the plaintiff brought an action against the defendant golf club, alleging negligence in the supervision of and failure to

---

[9] 157 Mich App 143.

[10] *Id.*

provide alternative transportation for an employee who had become intoxicated at a work-related dinner and, thereafter, fatally injured the plaintiff's decedent in a motor vehicle accident. The plaintiff also alleged that the defendant was liable under the dramshop act. The latter count was resolved and a consent judgment entered.

The subject of the appeal was the trial court's dismissal of the plaintiff's negligence action for failure to state a claim upon which relief could be granted on the defendant's motion for summary disposition. GCR 1963, 117.2(1) [now MCR 2.116(C)(8)]. The principal issue was whether the exclusive remedy of the dramshop act preëmpted the plaintiff's negligence claim. As we noted in *Millross,* the question whether a statutory scheme preëmpts the common law on a subject is a matter of legislative intent. *Id.* at 183. After applying the principles relevant to ascertaining the legislative intent,[11] this Court unequivocally reaffirmed the *Browder* Court's conclusion "that the Legislature intended the dramshop act to be a complete and

---

[11] In *Millross,* we noted the following:

Whether or not a statutory scheme preëmpts the common law on a subject is a matter of legislative intent. *Jones v Rath Packing Co,* 430 US 519; 97 S Ct 1305; 51 L Ed 2d 604 (1977), reh den 431 US 925 (1977). In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter. 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441.

\* \* \*

As a general principle of law, where a statute creates a new right and prescribes a particular remedy, the remedy is exclusive and must be strictly construed. *Holland v Eaton,* 373 Mich 34; 127 NW2d 892 (1964), overruled on other grounds 394 Mich 179; 229 NW2d 332 (1975). See also *Thurston v Prentiss,* 1 Mich 193 (1849); *In re Quinney Estate,* 287 Mich 329; 283 NW 599 (1939). [*Millross, supra* at 183-184.]

self-contained solution to a problem not adequately addressed at common law and the exclusive remedy for any action arising under 'dramshop related facts.' " *Millross, supra* at 185-186.[12] As this Court noted in *Browder, supra* at 614-615:

> [T]he Legislature has carefully considered and reconsidered the dramshop act to keep it internally balanced. As we have seen, the first adjustment was to add a specific two-year period of limitations where none had existed before. Compare 1958 PA 152, § 22(2) with 1933 [Ex Sess] PA 8, § 22 [1948 CL 436.22(2); MSA 18.993(2)]. Then the Legislature enacted a provision requiring that the bond automatically continue from year to year unless the Liquor Control Commission is given ten days' written notice by the surety of its intent to cancel the bond. 1961 PA 224. In 1972, several changes were made. Originally, the act provided for exemplary damages, 1933 [Ex Sess] PA 8, § 22, but this apparently tilted the act too far in favor of the claimant, so the Legislature modified the act to provide only for actual damages. The requirement of proximate causation was specifically added as was the provision giving the principal and surety all factual defenses which the intoxicated person or minor possessed. Finally the intricate balance was kept by requiring the plaintiff to name and maintain the intoxicated person who actually committed the injury as a defendant. 1972 PA 196, § 22(2). This, of course, is to avoid possible collusion between the plaintiff and the one who caused the injury. Cf. *Salas v Clements,* 399 Mich 103, 110; 247 NW2d 889 (1976). In short, the Legislature has carefully created a self-contained

---

[12] We also note that the Legislature has expressly codified this intent in 1986 PA 176, which provides:

(11) This section provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor. [MCL 436.22(11); MSA 18.993(11).]

package which has its own built-in checks and balances, among which are included a specified cause of action and period of limitations.

In striking the balance between the rights of persons injured under dramshop-related facts and the extent of the tavern owner's liability, the Legislature chose to omit intoxicated persons as a class protected by the act. We decline to view this omission as evincing an intention to permit an intoxicated party, regardless of condition or degree of intoxication, to pursue other common-law theories of liability which would effectively afford such persons greater rights and avenues of recovery than those available to innocent third parties. To the contrary, we believe the Legislature's failure to include the intoxicated party within the class of persons protected is indicative of its belief that the intoxicated party should not be afforded a remedy. To construe the statute otherwise would do violence to the Legislature's intent and its continuing efforts to keep the act internally balanced.

Moreover, we further clarified the *Manuel* test for determining which claims are proscribed by the exclusive remedy provision and those claims that can still be maintained:

*Manuel* sets forth a two-part analysis for determining what claims are proscribed by the exclusive remedy provision.

(1) Does the claim against "the tavern owner" arise out of an unlawful sale, giving away, or furnishing of intoxicants? If so, the dramshop act is the exclusive remedy.

(2) If the claim arises out of conduct other than selling, giving away, or furnishing of intoxicants, does the common law recognize a cause of action for the negligent conduct? If so, then the dramshop act neither abrogates nor controls the com-

mon-law action. If not, there is no independent common-law claim. [*Millross, supra* at 187.]

Upon applying this test to the facts of the instant case, it is readily apparent that plaintiff's common-law action for gross negligence is preëmpted by the dramshop act's exclusive remedy. In reviewing a grant of summary disposition under MCR 2.116(C)(8) for failure to state a claim upon which relief can be granted, this Court must accept as true all well-pled factual allegations to determine whether plaintiff's claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Abel v Eli Lilly & Co,* 418 Mich 311, 323-324; 343 NW2d 164 (1984), cert den sub nom *E R Squibb & Sons v Abel,* 469 US 833; 105 S Ct 123; 83 L Ed 2d 65 (1984).

Plaintiff's complaint set forth the following pertinent allegations:

16. On September 24, 1982, and September 25, 1982, between the hours of 4:00 P.M. and 2:30 A.M. the Plaintiff was a business invitee at Defendant's bar during which time the Plaintiff consumed excessive intoxicating liquors consisting of two fifths of rum, ten shot glasses of peppermint [s]chnapps and several shots of tequilla [sic], all of of [sic] which were served, sold or furnished to the Plaintiff by the agents, servants and employees of Defendant.

17. As a direct and proximate result of Plaintiff's consumption of intoxicating liquors at Defendant's bar between the hours of 4:00 P.M. and 2:30 A.M. on September 24, 1982, and September 25, 1982, Plaintiff became visibly intoxicated rendering her completely unable to safely operate a motor vehicle, which Defendant knew or should have known, after which time Defendant sold the Plaintiff an additional two cases of beer prior to

kicking her out at closing time to drive home with a blood alcohol content in excess of .3%.

18. On September 25, 1982, at approximately 3:45 A.M., the Plaintiff was operating her motor vehicle while under the influence of intoxicating liquors which were wilfully, wantonly, intentionally and recklessly sold, served and furnished to her by the Defendant, which alcohol consumption caused the Plaintiff to lose control of her motor vehicle and strike a telephone pole while traveling in excess of 100 miles per hour.

19. At all times during the Plaintiff's patronage of Defendant's bar up to and including September 25, 1982, the Defendant through the actions and omissions of its agents, servants and employees wilfully, wantonly, intentionally and wrecklessly [sic] encouraged the Plaintiff's consumption of intoxicating liquors through the sale, service and furnishing of intoxicating liquors to Plaintiff by Defendant's agents, servants and employees which conduct constitutes gross negligence.

20. The Defendant, through the aforesaid grossly negligent conduct of its agents, servants, and employees breached its duties to the Plaintiff by wilfully, wantonly, intentionally and wrecklessly [sic] selling, serving and furnishing intoxicating liquors to the Plaintiff, who Defendant knew or should have known was a compulsive, habitual alcoholic who Defendant encouraged to consume excessive intoxicating liquors while on Defendant's premises, notwithstanding Plaintiff's inability to refrain from the consumption of intoxicating liquors sold, served or furnished to her by the Defendant.

21. The aforesaid automobile accident occurred as a direct and proximate result of the Defendant's aforesaid grossly negligent conduct.

Accepting these allegations as true, they clearly establish that this action arose out of the defendant's unlawful furnishing of intoxicants to plaintiff. Therefore, her cause of action is barred by the

dramshop act's exclusive remedy. *Millross* and *Manuel, supra.*

## V

### CONCLUSION

The Legislature intended the dramshop act to afford the exclusive remedy for injuries arising out of an unlawful sale, giving away, or furnishing of intoxicants thereby preëmpting all common-law actions arising out of these circumstances. The allegations in plaintiff's complaint clearly reveal that her common-law action is predicated on defendant's alleged wrongful furnishing of intoxicants to her. Therefore, her claim is preëmpted by the dramshop act's exclusive remedy. The decision of the Court of Appeals is reversed. The Court of Appeals holdings in *Grasser v Fleming* and *Morris v Markley* are overruled.

LEVIN, BRICKLEY, CAVANAGH, BOYLE, and GRIFFIN, JJ., concurred with RILEY, C.J.

ARCHER, J. (*concurring in part*). I agree with the majority's holding that the Legislature intended the dramshop act to provide the exclusive remedy for injuries arising out of the unlawful sale, giving away, or furnishing of intoxicants. However, the statute hampers our ability to administer justice by precluding actions for gross negligence. The dramshop act, as it currently exists, provides no cause of action for an intoxicated patron. In this case, the defendant tavern owner profited from the extremely intoxicated patron. On the other hand, he bore no liability for the resultant harm to the intoxicated patron. The heightened culpability of the dramshop owner and the resultant harm to plaintiff cry out for redress in the form of an

action for gross negligence. The Legislature should consider amending the statute to afford a visibly intoxicated patron a remedy for the grossly negligent conduct of a tavern owner in selling, giving away, or furnishing intoxicants.

In her complaint, plaintiff alleged that (1) she is an alcoholic, (2) she had been a regular nightly customer at defendant's bar for two years prior to her accident, and (3) during this two-year period, defendant knew that she was "helplessly addicted to alcohol." Yet, on the evening of September 24, 1982, defendant served her drinks from 4:00 P.M. to approximately 2:30 A.M. the following morning. During this time she was served, and consumed, at least "two-fifths of rum, ten shot glasses of peppermint Schnapps and several shots of tequilla [sic] . . . ." In addition, defendant sold her two cases of beer as she was preparing to leave.[1]

On the basis of these facts, there should be a cause of action for gross negligence. After plaintiff became visibly intoxicated, defendant should have stopped serving intoxicants to her. At that point, defendant became the "least cost avoider" of the harm suffered by plaintiff. The "least cost avoider" theory has been explained as follows:

> The theory of the least cost avoider asserts that the entity that can avoid the accident at the least cost to society should bear liability if an accident should occur. The logic behind this theory is that liability will encourage the least cost avoider to prevent the accident.
> The least cost avoider initially is the intoxicated

---

[1] The trial court granted appellant's motion for summary disposition. A motion for summary disposition under MCR 2.116(C)(8) tests only the legal, not factual, sufficiency of the pleadings. In reviewing a grant or denial of a motion for summary disposition we "accept[ ] as true all of plaintiff's factual allegations as well as any reasonable inferences which may be drawn from the allegations." *Hoag v Paul C Chapman & Sons, Inc,* 62 Mich App 290, 295; 233 NW2d 530 (1975).

patron. He or she can prevent any alcohol-related accident by not drinking at all. However, after the patron has become intoxicated, the server becomes the least cost avoider. An extremely intoxicated person is no longer an "ordinary able-bodied m[a]n." He cannot make a rational decision to stop drinking and cannot acknowledge the risk of his intoxication. On the other hand, the server is likely to recognize the signs of intoxication and can refuse to continue serving the intoxicated person. The server should be aware of the various indicators of intoxication. Those courts allowing intoxicated persons to recover have recognized that the intoxicated person is incompetent and helpless, is unable to care for himself, and has a subnormal capacity for self-control.

This dual aspect of the least cost avoider theory —the intoxicated patron and the server being least cost avoiders at different points in time—suggests that application of comparative negligence is the best approach to dramshop liability because it is the fairest way to apportion liability. Comparative negligence would encourage both parties to avoid the accident by making both of them liable for resulting injuries, according to each party's degree of fault.[2]

According to this theory, plaintiff was initially the least cost avoider. However, after plaintiff became visibly intoxicated, defendant became the least cost avoider and, therefore, had a duty to stop serving intoxicants to plaintiff. It did not stop. Instead, it continued to profit from plaintiff's lack of control.

If the statute were amended to afford a visibly intoxicated patron a remedy for the grossly negligent conduct of a tavern owner in selling, giving away, or furnishing intoxicants, then the courts could apply the "least cost avoider" theory to

[2] Harden, *Dramshop liability: Should the intoxicated person recover for his own injuries?,* 48 Ohio St L J 227, 243 (1987).

produce an equitable and more efficient resolution
of cases arising under these circumstances. In the
instant case, the finder of fact could have appor-
tioned liability by applying comparative negligence
principles.[3]

## CONCLUSION

The dramshop act requires that I concur. How-
ever, the Legislature should explore the wisdom of
amending the statute to afford a visibly intoxi-
cated patron a remedy for the grossly negligent
conduct of a tavern owner in selling, giving away,
or furnishing intoxicants.

---

[3] *Placek v Sterling Heights,* 405 Mich 638, 650; 275 NW2d 511
(1979).