Michigan Supreme Court
Lansing, Michigan

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 30, 2004**

ROGER MANN,

    Plaintiff-Appellee,

v                                             No. 120651

SHUSTERIC ENTERPRISES, INC.,
doing business as SPEEDBOAT BAR & GRILL,

    Defendant-Appellant,

and

BADGER MUTUAL INSURANCE COMPANY,

    Defendant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal in this case to decide whether a plaintiff who suffers injury after slipping and falling in the parking lot of a bar where plaintiff has become visibly intoxicated may, notwithstanding the exclusivity provision of the dramshop act, MCL 436.1801(10),[1] pursue a common-law premises liability cause of action against that bar. The Court of Appeals affirmed

---

[1] Formerly, MCL 423.22, before April 14, 1998.

the jury's $226,000 verdict in favor of plaintiff, holding that the dramshop act did not preclude plaintiff's premises liability cause of action, and that the bar's knowledge of plaintiff's intoxication was relevant regarding whether the bar breached its duty to protect plaintiff against the ice and snow in its parking lot. Although we agree in part with the Court of Appeals and hold that the dramshop act does not preclude such a cause of action, we reject the holding by the Court of Appeals that the bar's knowledge of plaintiff's intoxication has any relevance. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 520; 629 NW2d 384 (2001). Accordingly, we reverse the decision of the Court of Appeals, vacate the jury verdict, and remand this case for further proceedings consistent with this opinion.

## I. Background

On March 6, 1996, during a blizzard, plaintiff entered defendant's bar and consumed nine alcoholic drinks in approximately three hours. After leaving the bar, plaintiff, who was visibly intoxicated and had a blood alcohol content of 0.25 percent,[2] sustained injuries when he slipped and fell on ice and snow that had accumulated in

---

[2] Plaintiff's expert testified that given plaintiff's ingestion of so much alcohol, it was highly improbable that plaintiff could "mask" the degree of his intoxication. The expert apparently concluded that plaintiff was "visibly intoxicated."

2

defendant's parking lot during the blizzard. Accordingly, plaintiff filed a premises liability cause of action against defendant, claiming that defendant breached its duty of care by failing to warn plaintiff of the ice and snow in defendant's parking lot and failing to remove such ice and snow within a reasonable time after it had accumulated in defendant's parking lot.

Over defense objection to an instruction on M Civ JI 19.03, the trial court delivered both the "Duty Of Possessor Of Land, Premises, Or Place Of Business To Invitee" instruction[3] and the "Duty Of Possessor Of Land, Premises, Or Place Of Business To A Business Invitee Regarding Natural Accumulation Of Ice And Snow" instruction.[4] While finding plaintiff fifty percent

---

[3] M Civ JI 19.03 states, in relevant part:

A possessor must warn the invitee of dangers that are known or that should have been known to the possessor unless those dangers are open and obvious. However, a possessor must warn an invitee of an open and obvious danger if the possessor should expect that an invitee will not discover the danger or will not protect [himself] against it.
*Note on Use*

This paragraph is to be used in cases involving a claim of failure to warn.

[4] M Civ JI 19.05 states:

It was the duty of [defendant] to take reasonable measures within a reasonable period of

(continued…)

3

comparatively negligent, the jury returned a $226,000 verdict in plaintiff's favor. Because plaintiff believed that the jury's failure to award noneconomic damages was against the great weight of the evidence, he filed a motion for additur or for a new trial, which motion the trial court denied.

Defendant appealed, raising the issues of instructional error and error in the calculation of damages. Plaintiff cross-appealed, contending that the trial court erred in denying his motion for additur or for a new trial. In its first opinion, the Court of Appeals reversed the decision of the trial court denying plaintiff's motion for additur or for a new trial.[5] However, on defendant's motion for rehearing, the Court of Appeals affirmed the decision of the trial court in all respects.[6]

---

(…continued)
    time after the accumulation of snow and ice to
    diminish the hazard of injury to [plaintiff].
    *Note on Use*

        This instruction should be used where
    applicable instead of the more general M Civ JI
    19.03 Duty of Possessor of Land, Premises, or
    Place of Business to Invitee. It does not apply
    to public sidewalks.

[5] Unpublished opinion per curiam, issued May 11, 2001 (Docket No. 210920).

[6] Unpublished opinion per curiam, issued November 30, 2001 (Docket No. 201920).

4

Defendant sought leave to appeal in this Court, arguing that a premises liability cause of action that is alleged to be grounded in the consumption of alcohol is a dramshop action in another guise and, thus, because of the exclusivity provision of the dramshop act, plaintiff should be precluded from pursuing any other cause of action, including a premises liability action.

## II. Standard of Review

Statutory interpretation is an issue of law that is reviewed de novo. *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 419; 662 NW2d 710 (2003).

## III. Analysis

Defendant argues that plaintiff's premises liability cause of action is precluded by the exclusivity provision of the dramshop act, MCL 436.1801(10), which provides:

> This section [MCL 436.1801] provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor.[7]

Moreover, because the act also provides that "[t]he alleged visibly intoxicated person shall not have a cause of action

---

[7] "[T]he dramshop act affords the exclusive remedy for injuries arising out of an *unlawful sale, giving away,* or *furnishing of intoxicants.*" *Manuel v Weitzman*, 386 Mich 157, 164-165; 191 NW2d 474 (1971), quoting *De Villez v Schifano*, 23 Mich App 72, 77; 178 NW2d 147 (1970)(emphasis in original). An "unlawful" sale is a sale to either a minor or a visibly intoxicated person. MCL 436.1801(3).

pursuant to this section . . . ," MCL 436.1801(9), defendant argues that plaintiff, as the alleged visibly intoxicated person, has no cause of action at all under the dramshop act.

Plaintiff does not contest that, if his cause of action, in fact, did arise from defendant's unlawful "selling, giving, or furnishing" of alcohol, he would be barred from bringing this cause of action by the dramshop act. However, plaintiff instead asserts that the act does not preclude a premises liability action filed by a visibly intoxicated person against the dramshop that unlawfully served alcohol to that person.

We agree with plaintiff. Here, plaintiff's action arises from injuries he sustained after he slipped and fell in defendant's icy and snow-covered parking lot. That is, plaintiff's action is based on the claim that defendant did not sufficiently protect him as an invitee from a dangerous condition on the premises, specifically defendant's icy and snow-covered parking lot. Accordingly, this is not an action arising from the unlawful "selling, giving, or furnishing" of alcohol. MCL 436.1801(3). Rather, it is an ordinary premises liability action. This is made evident by considering that, had plaintiff not been served any alcohol at all by defendant, but still sustained the same injuries, plaintiff would not be precluded from asserting a

6

premises liability action for such injuries on the basis of his invitee status.[8]

Because we hold that the dramshop act does not preclude plaintiff's premises liability cause of action, we next consider the relevancy of plaintiff's intoxication and defendant's knowledge of such intoxication. Generally, a premises possessor owes a duty of care to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995). This duty generally does not encompass a duty to protect an invitee from "open and

___

[8] Because this is not an action arising from the unlawful "selling, giving, or furnishing" of alcohol, and because the common law recognizes a cause of action for defendant's alleged negligence, *Lugo, supra* at 516-517, our holding that the dramshop act does not preclude plaintiff's cause of action is consistent with the test set forth by this Court in *Manuel v Weitzman*, 386 Mich 157; 191 NW2d 474 (1971), as described in *Millross v Plum Hollow Golf Course*, 429 Mich 178, 187; 413 NW2d 17 (1987):

"(1) Does the claim against 'the tavern owner' arise out of an unlawful sale, giving away, or furnishing of intoxicants? If so, the dramshop act is the exclusive remedy.

"(2) If the claim arises out of conduct other than selling, giving away, or furnishing of intoxicants, does the common law recognize a cause of action for the negligent conduct? If so, then the dramshop act neither abrogates nor controls the common-law action. If not, there is no independent common-law claim."

See also *Jackson v PKM Corp*, 430 Mich 262, 276-277; 422 NW2d 657 (1988)(applying the *Manuel* test as described in *Millross*).

7

obvious" dangers. *Lugo, supra* at 516. However, if there are "special aspects" of a condition that make even an "open and obvious" danger "unreasonably dangerous," the premises possessor maintains a duty to undertake reasonable precautions to protect invitees from such danger. *Id*. at 517.[9] To determine whether a condition is "open and obvious," or whether there are "special aspects" that render even an "open and obvious" condition "unreasonably dangerous," the fact-finder must utilize an objective standard, i.e., a reasonably prudent person standard. *Id*. That is, in a premises liability action, the fact-finder must consider the "condition of the premises," not the condition of the plaintiff. *Id*. at 518 n 2.[10] A visibly

_____

[9] By his exaggerated language—"the majority [is] using this case as a vehicle to rewrite Michigan premises liability law," *post* at 1-2; "[t]oday's decision is simply the latest installment in the majority's systematic dismantling of the Restatement approach," *id*. at 2; "the majority . . . overrules decades of well-reasoned precedent, *id*.; "the majority repudiates the Restatement approach," *post* at 10,—Justice CAVANAGH is again merely raising issues he initially raised in his concurring opinion in *Lugo*, while in the process giving no effect to the "special aspects" doctrine articulated in that decision. *Lugo, supra* at 527. He is, of course, entitled to reargue *Lugo* for as long as he wishes, but it should be understood that the instant case represents nothing more than an ordinary application of the principles set forth in that opinion.

[10] In making a determination about whether an alleged dangerous condition is "open and obvious," such a determination is not dependent on the characteristics of a particular plaintiff, but rather on the characteristics of

(continued…)

intoxicated person is held to the same standard of reasonable conduct as a sober person.

Accordingly, the Court of Appeals erred when it stated:

> Defendant's service of alcohol was implicated only as it related to defendant's knowledge of plaintiff's condition as relevant to whether defendant's conduct in failing to inspect or clear the parking lot and failing to warn plaintiff was reasonable. [November 30, 2001, slip op at 4.]

Rather, defendant's knowledge that plaintiff was intoxicated does not affect the legal duties it owes to plaintiff. That is, although defendant served plaintiff alcohol and was apparently aware that plaintiff was intoxicated, defendant does not owe plaintiff any heightened duty of care. Rather, in determining whether defendant breached its duty, the fact-finder must decide only whether a reasonably prudent person would have slipped and fallen on the ice and snow in defendant's parking lot,

---

(…continued)

a reasonably prudent person. *Bertrand, supra* at 617; *Radtke v Everett,* 442 Mich 368, 390-391, 501 NW2d 155 (1993), quoting 2 Restatement Torts, 2d, § 283, comment c, p 13; *Sidorowicz v Chicken Shack, Inc,* 469 Mich 912 (2003)(TAYLOR, J., concurring). By imposing an obligation upon a homeowner or other premises possessor, not merely to make his premises reasonably safe under ordinary circumstances, but also under every conceivable circumstance, Justice CAVANAGH in his concurrence/dissent, *post* at 7, would impose a substantially increased legal burden upon such persons.

or whether that reasonably prudent person should have been warned by defendant of the dangerous condition.

If plaintiff's extent of intoxication were considered in determining defendant's duty of care to plaintiff, such consideration, in our judgment, would circumvent the dramshop act's prohibition against permitting a visibly intoxicated person from collecting monetary damages arising from defendant's unlawful "selling, giving, or furnishing" of alcohol to such plaintiff. MCL 436.1801(9)(10). The dramshop act protects dramshop owners by prohibiting a visibly intoxicated person from recovering damages that have arisen from the dramshop unlawfully "selling, giving, or furnishing" alcohol to such person. In our judgment, the statutory protection would be nullified if dramshop owners, in premises liability actions, were held to a higher duty of care because they unlawfully sold alcohol to a visibly intoxicated person. Accordingly, a dramshop owner, as with any other property owner, has a duty toward the reasonably prudent invitee; he does not, however, have a heightened duty in the case of the visibly intoxicated invitee. Concomitantly, there is no diminished standard of reasonable conduct on the part of a visibly intoxicated invitee in comparison with any other invitee.

Defendant raises one last argument concerning the jury instructions. The "Note on Use" of M Civ JI 19.05 states

10

that "this instruction [pertaining to the obligations of a premises possessor to diminish the hazards arising from the accumulation of ice and snow] should be used where applicable instead of the more general M Civ JI 19.03 [pertaining to the obligations of a premises possessor to warn of open and obvious dangers] . . . ." By virtue of the "instead of" language, defendant argues that § 19.03 and § 19.05 are mutually exclusive and that the trial court erred in giving § 19.03. Defendant argues that § 19.05 applies in a single specific situation— where there is an accumulation of ice and snow— and that in such a situation, the trial court should only have instructed on § 19.05. We disagree. Under *Lugo*, a premises possessor has a duty to "protect" an invitee from dangers that are either not "open and obvious," or, although "open and obvious," contain "special aspects" that make such dangers "unreasonably dangerous." *Lugo, supra* at 516-517. Because the duty to "protect," as that term was used in *Lugo*, is broader and more general than either the duty to "warn," § 19.03, or the duty to "diminish" a hazard caused by ice and snow, § 19.05, we believe that the duty to "protect" encompasses both the duty to "warn" and the duty to "diminish" in these instructions. Accordingly, to the extent that the "Note on Use" of § 19.05 implies that § 19.03 and § 19.05 are mutually exclusive, such an implication is unwarranted

11

under *Lugo*, and the trial court did not err on this ground in delivering both instructions.

However, we believe that § 19.03 is an inaccurate instruction. Under *Lugo*, a premises possessor must protect an invitee against an "open and obvious" danger only if such danger contains "special aspects" that make it "unreasonably dangerous." *Lugo, supra* at 517. Because "special aspects" are not defined with regard to whether a premises possessor should expect that an invitee will not "discover the danger" or will not "protect against it," § 19.03, but rather by whether an otherwise "open and obvious" danger is "effectively unavoidable" or "impose[s] an unreasonably high risk of severe harm" to an invitee, *Lugo, supra* at 518, we believe that § 19.03 sets forth an inaccurate statement of premises liability law.[11]

We further believe that § 19.05 sets forth an inaccurate instruction. Under *Lugo*, a premises possessor must protect an invitee against an "open and obvious" danger only if such danger contains "special aspects" that make it "unreasonably dangerous." *Lugo, supra* at 517. Thus, in the context of an accumulation of snow and ice,

---

[11] Moreover, "an invitee," as used in § 19.03, must be understood to refer to a "reasonably prudent" invitee. *Lugo, supra* at 523. Accordingly, a trial court must explain that this term refers to an objective invitee.

*Lugo* means that, when such an accumulation is "open and obvious," a premises possessor must "take reasonable measures within a reasonable period of time after the accumulation of snow and ice to diminish the hazard of injury to [plaintiff]" only if there is some "special aspect" that makes such accumulation "unreasonably dangerous."[12] Section 19.05 ignores *Lugo's* "unreasonably dangerous" requirement by imposing an absolute duty on a premises possessor irrespective of whether the accumulation of snow and ice creates "special aspects" making such accumulation "unreasonably dangerous."[13] Such an absolute duty does not exist under *Lugo*.

---

[12] Because we are seeking here to conform M Civ JI 19.05 with *Lugo*, and because *Lugo* has brought some reasonable measure of clarity to a law that had previously been in disarray, we respectfully disagree with Justice CAVANAGH's assertion in his concurrence/dissent that, "[i]n qualifying M Civ JI 19.05 with its *Lugo* standard, the majority has added uncertainty to Michigan premises liability law." *Post* at 10-11. Rather, the majority believes that it has moved in precisely the opposite direction by seeking to coordinate and render consistent the case law of Michigan rather than allowing, as has too often been true in recent years, multiple, conflicting expressions of the law to coexist, essentially allowing litigants to choose among inconsistent opinions in the manner that a patron at a Chinese restaurant might choose among dinner items from Column A or Column B. See, e.g., *Nawrocki v Macomb Co Road Comm*, 463 Mich 143; 615 NW2d 702 (2000).

[13] *Quinlivan v The Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 261; 235 NW2d 732 (1975), must be understood in light of this Court's subsequent decisions in *Bertrand* and *Lugo*. Concerning the duty of care a homeowner

(continued…)

13

## IV. Conclusion

We agree in part with the Court of Appeals and hold that the dramshop act does not preclude plaintiff's premises liability cause of action because plaintiff's

---

(…continued)

or other premises possessor owes to an invitee arising from the accumulation of ice and snow, Justice WEAVER relies in her concurrence/dissent on *Quinlivan* and asserts that "premises possessors owed a duty to invitees to take 'reasonable measures . . . within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee.'" *Post* at 2 (citation omitted). The majority is unprepared to hold that, absent any special aspects, and absent consideration of the open and obvious nature of a hazard, a homeowner or other premises possessor owes an absolute duty to an invitee to diminish the hazards attendant to the accumulation of ice and snow.

Further, we are perplexed how Justice WEAVER, in light of her concurring opinion in *Lugo, supra* at 544, in which she asserted that *only* the open and obvious standard should apply in determining whether a homeowner or other premises possessor is liable to an invitee for a dangerous condition on his premises, would now disavow the majority's supposed application of *Lugo* to *Quinlivan* on the grounds that not only are "snow and ice accumulations . . . obvious," but "the 'rigorous duty' owed by invitors to protect invitees from unreasonable harm justifie[s] the imposition of a uniform duty on invitors regarding accumulations of snow and ice." *Post* at 2. Consistent with her opinion in *Lugo*, we are hard-pressed to understand how Justice WEAVER could now conclude that a homeowner or other premises possessor has a duty of care to diminish a hazard caused by the accumulation of ice and snow, even if such hazard is open and obvious. In other words, Justice WEAVER criticizes the majority in *Lugo* for failing to accord the "openness and obviousness" of a hazard *exclusive* consideration, while in the instant case, she criticizes the majority for according the "openness and obviousness" of a hazard *excessive* consideration. Her positions in these two cases are wholly incompatible.

14

injuries arose from something other than defendant unlawfully "selling, giving, or furnishing" alcohol to plaintiff.[14] However, we also hold that a dramshop's knowledge of an invitee's intoxication is irrelevant in determining whether that dramshop has breached its duty of care toward such invitee, and that there is no diminished standard of conduct on the part of a visibly intoxicated invitee. Accordingly, we reverse the judgment of the Court of Appeals, vacate the jury verdict, and remand this case for further proceedings consistent with this opinion.[15]

Stephen J. Markman
Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.

---

[14] However, contrary to the dissent, *post* at 1, we do not reach this conclusion on the basis of our assessment of the "spirit" of the dramshop act, but rather on the basis of our assessment of its language.

[15] Although the jury found plaintiff fifty percent comparatively negligent, it does not necessarily follow that the jury found that a reasonably prudent person would not have fallen in defendant's parking lot. Instead, by apportioning some negligence to plaintiff, the jury conceivably was finding only that, although a reasonably prudent person *would* also have fallen, such a person would not have sustained the same degree of injuries suffered by the visibly intoxicated plaintiff. We remand this case in order to enable the trial court to review de novo the proper legal standards and jury instructions in light of the facts of this case.

S T A T E   O F   M I C H I G A N

SUPREME COURT

ROGER MANN,

    Plaintiff-Appellee,

v                                                              No. 120651

SHUSTERIC ENTERPRISES, INC.,
doing business as SPEEDBOAT BAR & GRILL,

    Defendant-Appellant,

And

BADGER MUTUAL INSURANCE COMPANY,

    Defendant.

_____

CORRIGAN, C.J. (*concurring*).

I concur with the majority's reasoning and decision to remand this case for further proceedings. I agree that a premises owner has no duty to protect an invitee from open and obvious dangers on a premises unless "special aspects" render the condition "unreasonably dangerous." *Lugo v Ameritech,* 464 Mich 512, 517; 629 NW2d 384 (2001).

I do not consider the more difficult questions whether plaintiff's cause of action is precluded by the dramshop act and whether *Manuel v Weitzman*, 386 Mich 157, 163; 191 NW2d 474 (1971) should be overruled because those arguments were never presented in the circuit court. Defendant

raised the dramshop act's exclusivity provision[1] in a pretrial conference only in connection with jury instructions. It explicitly waived the issue that the dramshop act was plaintiff's exclusive remedy.[2] Thus, although plaintiff's proofs at trial appeared to invade the province of the dramshop act, I do not need to consider that question because of the procedural posture of the case.

Maura D. Corrigan

---

[1] "This section provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor." MCL 436.1801(10).

[2] Defendant's attorney stated "Mr. Brittain has talked a lot about how he's entitled to bring a premises claim. We've never disputed that."

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

ROGER MANN,

    Plaintiff-Appellee,

v                                No. 120651

SHUSTERIC ENTERPRISES, INC,
doing business as SPEEDBOAT BAR & GRILL,

    Defendant-Appellant,

and

BADGER MUTUAL INSURANCE COMPANY,

    Defendant.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I agree with the majority that the exclusivity provision of the dramshop act, MCL 436.1801(10), does not preclude plaintiff's premises liability claim. I also agree that, under the unique facts of this case, consideration of plaintiff's intoxication with regard to defendant's duty of care in a premises liability action may circumvent the spirit of the dramshop act. I must, however, concur in the result only.

Unlike the majority, I believe that M Civ JI 19.03 and 19.05 remain accurate instructions under Michigan law. Moreover, I am troubled by the majority using this case as

a vehicle to rewrite Michigan premises liability law and to unwisely extend the rationale of *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001). Until today, the precise application and scope of the majority's "special aspects" analysis was unclear. See, e.g., *Brousseau v Daykin Electric Corp*, 468 Mich 865 (2003) (MARKMAN, J., dissenting). Unfortunately, the majority opinion today ends that debate.

Today's decision is simply the latest installment in the majority's systematic dismantling of the Restatement of Torts approach. The majority effectively states that the Restatement approach is dead because *Lugo*, and only *Lugo*, is the law in Michigan. In revising M Civ JI 19.03, the majority signals the death knell to the protections previously afforded the citizens of this state and, as a practical matter, overrules decades of well-reasoned precedent.

I remain committed to the view that the majority's singular approach is wrong and inconsistent with Michigan's premises liability jurisprudence.[1] Because *Lugo*, and its "special aspects" analysis, is not the only relevant

---

[1] I appreciate the majority graciously granting me permission to espouse my view of the law and allowing me to "reargue" the ramifications of overreliance on *Lugo*'s errant approach. See *ante* at 8 n 9.

2

inquiry in such cases, I fail to see the wisdom of revising M Civ JI 19.03 and 19.05 to only reflect the current majority's *Lugo* standard. I remain committed to the view that under Michigan law, other inquiries are relevant, if not required, in open and obvious danger cases.

## I. M Civ JI 19.03

I agree with the majority that a premises possessor is generally not required to protect an invitee from open and obvious dangers. This is the approach advanced by 2 Restatement Torts, 2d, § 343A, an approach which "has been key to Michigan's open and obvious danger law . . . ." *Lugo, supra* at 528 (CAVANAGH, J., concurring); see also *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995); *Perkoviq v Delcor Homes-Lake Shore Pointe, Ltd*, 466 Mich 11, 16; 643 NW2d 212 (2002). As noted by the Restatement, however, there are exceptions to this general rule, and these exceptions cannot be conveniently summarized by a "special aspects" analysis.

The applicable Restatement sections provide:

§ 343. Dangerous conditions known to or discoverable by possessor.

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

3

(b) *should expect that they will not discover or realize the danger, or will fail to protect themselves against it*, and

(c) fails to exercise reasonable care to protect them against the danger. [2 Restatement Torts, 2d, § 343, pp 215-216 (emphasis added).]

§ 343A. Known or obvious dangers.

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated. [*Id*. at § 343A, p 218 (emphasis added).]

Comment f to § 343A is particularly enlightening and states

in relevant part:

There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. *This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm*.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, *or fail to*

4

*protect himself against it.* [*Id.* 2d, § 343A comment 1(f), p 220 (emphasis added).]

It is within this context that the proposed revisions to M Civ JI 19.03 must be examined. The instruction provides in pertinent part:

A possessor of [land/premises/a place of business] has a duty to maintain the [land/premises/place of business] in a reasonably safe condition.

A possessor has a duty to exercise ordinary care to protect an invitee from unreasonable risks of injury that were known to the possessor or that should have been known in the exercise of ordinary care.

*(A possessor must warn the invitee of dangers that are known or that should have been known to the possessor unless those dangers are open and obvious. However, a possessor must warn an invitee of an open and obvious danger if the possessor should expect that an invitee will not discover the danger or will not protect [himself/herself] against it.)* [Emphasis added.]

On the bases of the Restatement and Michigan law, I believe M Civ JI 19.03 to be an accurate instruction.

For example, in *Riddle v McLouth Steel Products Corp*, 440 Mich 85; 485 NW2d 676 (1992), this Court made it clear that the open and obvious doctrine is not an absolute bar to liability. In *Riddle*, this Court noted that "where the dangers are known to the invitee or are *so obvious* that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee *unless* he should anticipate the harm despite knowledge of it on

5

behalf of the invitee." *Riddle*, *supra* at 96 (emphasis added). As the Minnesota Supreme Court has noted, § 343A's "unless" clause is a "crucial qualifier to the general rule" of the Restatement. *Sutherland v Barton*, 570 NW2d 1, 7 (Minn, 1997).[2] Thus, "[i]f the conditions are known or obvious to the invitee, the premises owner may nonetheless be required to exercise reasonable care to protect the invitee from the danger." *Riddle*, *supra* at 97.

It becomes obvious that the "special aspects" of a particular condition may be *a* critical question in determining whether liability should be imposed upon a possessor in open and obvious danger cases. The majority concludes that under its "special aspects" analysis, "the fact-finder must consider the 'condition of the premises,' not the condition of the plaintiff." *Ante* at 10. Although this may be a relevant inquiry, the condition's "special aspects" are by no means dispositive. Additionally, solely focusing on a condition's "special aspects" reads the "unless" clause out of Michigan premises liability law.

---

[2] See also 1 Dobbs, Torts (2001), § 235, p 604 (The Restatement view "has commanded almost complete acceptance where it has been expressly considered."); Prosser & Keeton, Torts (5th ed, 1984), § 61, p 427 ("In any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required.").

Rather, the "special aspects" endeavor must be made *within* the framework set forth by the Restatement as adopted by this Court. Thus, under Michigan practice, other inquiries are required in making a liability determination and a court's analysis simply does not end with the condition's "special aspects." Stated differently, "The liability of an owner or occupier should not be determined solely by the condition of the premises, natural or artificial, but rather by the occupier's conduct in relation to those conditions—that is, considering all of the circumstances, was due care exercised." Littlejohn, Torts [1974 Annual survey of Michigan law], 21 Wayne L R 665, 677-678 (1975). M Civ JI 19.03 recognizes this point of law and, therefore, remains an accurate instruction.

Consider the following hypothetical example, an elaboration of the facts presented in *Sidorowicz v Chicken Shack, Inc*, 469 Mich 912; 673 NW2d 106 (2003). During remodeling, a particular restaurant has a six-foot hole in its floor. The restaurant owner decides it would be beneficial to remain open during remodeling. The owner conspicuously places large signs at the entrance and throughout the restaurant indicating the presence of the hole. The owner further places a giant red flag in the center of the hole. Patrons can easily avoid the hole by traveling down one of two alternate aisles. A blind person

enters the restaurant to grab a bite to eat.  The owner *knows* that the invitee is blind.  The invitee is wearing sunglasses, carries a white cane, has a sign around his neck that reads, "I am blind," and even orally states to the owner, "I am blind and cannot see."

The hole is properly considered a dangerous condition on the land.  Further, the condition would arguably be considered open and obvious to a reasonably prudent person.[3] Additionally, no "special aspects" exist in this situation because the "average" person could easily avoid the dangerous condition by taking an alternative route.  Under the majority's approach, the analysis ends at this point and the restaurant owner can never be held liable for failing to warn the blind invitee or for failing to take other actions to protect this person.  This is true even though the owner *knows* with near absolute certainty that the invitee will be unable to protect himself and will

---

[3] The Restatement defines a dangerous condition as "obvious" where "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment."  2 Restatement Torts, 2d, § 343A comment 1(b), p 219.  Further, "[t]he word 'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves.  Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id.*

8

suffer physical injury.  The prior decisions from this Court, M Civ JI 19.03, the Restatement, and common sense suggest that the owner may be held liable in this instance despite the "obviousness" of the dangerous condition.  This point of law appears to have eluded the majority and I would necessarily have to hold myself liable if I did not warn its members of their obvious error.

In its assessment of the above hypothetical example, the majority states, "By imposing an obligation upon a homeowner or other premises possessor, not merely to make his or her premises reasonably safe under *ordinary* circumstances, but also under *every conceivable* circumstance, Justice Cavanagh in his concurrence/dissent, . . . would impose a substantially increased legal burden upon such persons." *Ante* at 9 n 10 (emphasis added).  I am troubled by this assertion because, unlike the majority, I do not believe that a blind person entering a restaurant is an extraordinary or uncommon event.  Moreover, I question the wisdom of any rule of law that only applies under so-called "ordinary" or idyllic circumstances.  The Restatement approach seeks to protect those who cannot protect themselves, including the more than forty-three million Americans with disabilities.  Apparently, the majority's oversimplified *Lugo* approach takes a different view.

9

In sum, I am troubled by the majority's overreliance on *Lugo*'s "special aspects" analysis. By focusing solely on this analysis, the majority repudiates the Restatement approach and, at the very least, unwisely eliminates the "unless" clause from Michigan jurisprudence.

## II. M Civ JI 19.05

I share in the concerns expressed by Justice Weaver and likewise disagree with the majority's decision to revise M Civ JI 19.05 to solely reflect its *Lugo* standard. In *Quinlivan v The Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 261; 235 NW2d 732 (1975), this Court stated, "While the invitor is not an absolute insurer of the safety of the invitee, the invitor has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation." Such a duty requires "that reasonable measures be taken within a reasonable time after an accumulation . . . ." *Id*. M Civ JI 19.05 accurately reflects the rule announced in *Quinlivan* and followed in this state for nearly thirty years.[4]

In qualifying M Civ JI 19.05 with its *Lugo* standard, the majority has added uncertainty to Michigan premises

---

[4] M Civ JI 19.05 provides: "It was the duty of [Defendant] to take reasonable measures within a reasonable period of time after an accumulation of snow and ice to diminish the hazard of injury to [Plaintiff]."

10

liability law. In response to the dissent, the majority claims that *Quinlivan* "must be understood in light of this Court's subsequent decisions in *Bertrand* and *Lugo*." *Ante* at 14 n 13. However, neither *Bertrand* nor *Lugo* involved the accumulation of ice and snow. Further, today's opinion, taken to its logical conclusion, could be read to imply that any accumulations of ice and snow are necessarily open and obvious dangers. Yet, in *Quinlivan* this Court specifically rejected "the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability." *Quinlivan*, supra at 261. Thus, the majority creates unnecessary tension with *Quinlivan* where none had existed before.

Additionally, even if the majority opinion is read narrowly, i.e., that the *Lugo* qualification only applies where it is first determined that the accumulation is open and obvious, today's approach significantly alters the duty traditionally imposed upon possessors of land. Nothing in *Quinlivan* suggests that an invitor must diminish the hazards of ice and snow *only if* the accumulation involves "special aspects" or is "unreasonably dangerous." I share in the concerns set forth by Justice Weaver regarding this line of reasoning. Because M Civ JI 19.05 accurately reflects *Quinlivan* and *Quinlivan* remains the law, I must

11

respectfully disagree with the majority's decision to revise this instruction in light of *Lugo*.

                                        Michael F. Cavanagh
                                          Marilyn Kelly

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

ROGER MANN,

    Plaintiff-Appellee,

v                                      No. 120651

SHUSTERIC ENTERPRISES, INC,

    Defendant-Appellant

and

BADGER MUTUAL INSURANCE COMPANY,

    Defendant.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

I concur in the result only with the majority's decision to vacate the jury verdict for plaintiff.

I agree that, under the specific facts of this case, the licensee's knowledge of plaintiff's intoxication is irrelevant with regard to whether the bar breached its common-law duty of care to plaintiff. However, I dissent from the majority's extension of the "special aspect test" from *Lugo v Ameritech Corp Inc*, 464 Mich 512; 629 NW2d 384 (2001), to cases such as this one involving the natural accumulation of snow and ice.[1] The majority decision will

---

[1] In *Bertrand v Alan Ford, Inc*, 449 Mich 606; 537 NW2d 185 (1995), a majority articulated a "special aspect" test

(continued…)

create confusion regarding every citizen's duty regarding accumulations of snow and ice.

Without explanation, the majority changes the law regarding the duty of premises possessors to invitees with respect to accumulations of snow and ice. Almost thirty years ago, this Court in *Quinlivan v The Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 260-261; 235 NW2d 732 (1975), recognized that although snow and ice accumulations are obvious, the "rigorous duty" owed by invitors to protect invitees from unreasonable harm justified the imposition of a uniform duty on invitors regarding accumulations of snow and ice. *Quinlivan,* therefore, held that premises possessors owed a duty to invitees to take "reasonable measures . . . within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee." *Id.*

However, in this case the majority holds:

> [W]hen such an accumulation is "open and obvious," a premises possessor must "take

_____

(…continued)
for evaluating whether a danger was unreasonably dangerous so as to avoid the application of the open and obvious danger doctrine. In *Lugo v Ameritech Corp Inc*, 464 Mich 512; 629 NW2d 384 (2001), a majority transformed the "special aspect" test by introducing a new standard that focuses on the severity of possible harm to define what "special aspects" might create an unreasonable risk of harm.

reasonable measures within a reasonable period of time after the accumulation of snow and ice to diminish the hazard of injury to [plaintiff]" only if there is some "special aspect" that makes such accumulation "unreasonably dangerous." *Ante* at 13.

With this, the majority overrules *Quinlivan*. The majority says that it is "unprepared to hold that, absent any special aspects, and absent consideration of the open and obvious nature of a hazard, a homeowner or other premises possessor owes an absolute duty to an invitee to diminish the hazards attendant to the accumulation of ice and snow." *Ante* at 14 n 13.

While *Quinlivan* clarified a premises possessor's duty regarding all snow and ice accumulations, the majority confuses this area of premises liability law by holding that some kinds snow and ice are more dangerous than others. Now, in cases involving snow and ice, it must first be established that the accumulation was open and obvious. Most such accumulations will, by the very nature of an accumulation, be open and obvious.[2] Thus, most snow and ice cases will then be subjected to *Lugo's* special aspect test. Now, unless there are "special aspects" to an

---

[2] Because the majority fails to explain the nature of a premises possessor's duty regarding accumulations of snow and ice that are not open and obvious, we must await the inevitable black ice case to fully understand and assess the majority's decision to overrule *Quinlivan*.

accumulation of snow and ice creating a risk of "severe harm," a premises possessor owes no duty to take reasonable measures within a reasonable time to protect invitees from the danger. One can readily anticipate nuanced debate and inconsistent conclusions regarding whether an accumulation of snow was heavy or light, wet or dry, hard-packed or fluffy, etc. and just how those varied conditions affected the unreasonableness or severity of harm posed by a given accumulation.

In Michigan, where accumulations of snow and ice abound, every citizen's duty with respect to all accumulations of snow and ice should be unambiguous. Changes by this Court regarding that duty should be well-reasoned and obvious. *Lugo* did not involve an accumulation of snow and ice.[3] The majority should not extend *Lugo's*

---

[3] The majority incorrectly suggests that my position in this case is inconsistent with my position in *Lugo.* In *Lugo* at 546 (WEAVER, J., concurring)*,* I said that the *Lugo* majority was wrong to change the law and should have remained true to well-established articulations of the open and obvious doctrine. Today, I again reject the majority's decision to change the law, this time regarding accumulations of snow and ice, because I would affirm *Quinlivan's* articulation of duty in snow and ice cases. As I explained in *Bertrand, supra* at 625 (WEAVER, J., concurring and dissenting), under *Quinlivan,* snow and ice accumulation cases were essentially exceptions to the open and obvious doctrine. I would continue to distinguish snow and ice cases from other premises defects and encourage the

(continued…)

4

"special aspect" test to this context and should not overrule *Quinlivan* and leave to the fact-finder the confusing task of distinguishing between differing types of snow and ice accumulations.[4]

Therefore, I dissent from the majority extending the *Lugo* "special aspects" test to accumulations of snow and ice. I concur only in the decision of the majority in vacating the jury verdict for plaintiff because, under the facts of this case, the licensee's knowledge of plaintiff's intoxication is irrelevant to whether the bar breached its common-law duty of care to plaintiff.

Elizabeth A. Weaver

---

(…continued)
majority to stop destabilizing the law of premises liability.

[4] Because I continue to disagree with the evolution of the "special aspects" test, I would not amend M Civ JI 19.03 to incorporate it. See *Bertrand, supra* at 625-626 (WEAVER J., concurring and dissenting) and *Lugo, supra* at 544 (WEAVER J., concurring). Similarly, for the reasons stated above, I would not amend M Civ JI 19.05 regarding the duty of premises possessors to take reasonable measures within a reasonable time regarding accumulations of snow and ice.